## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MARYLAND CLEAN ENERGY CENTER, STATE OF ARIZONA, CALIFORNIA PUBLIC UTILITIES COMMISSION, STATE OF COLORADO, STATE OF CONNECTICUT, DISTRICT OF COLUMBIA, STATE OF HAWAI'I, ILLINOIS FINANCE AUTHORITY, OFFICE OF THE GOVERNOR *EX REL.* ANDY BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF KENTUCKY, STATE OF MAINE, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, NEVADA CLEAN ENERGY FUND, STATE OF NEW JERSEY, STATE OF NEW MEXICO, NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY, STATE OF NORTH CAROLINA, STATE OF OREGON, PENNSYLVANIA ENERGY DEVELOPMENT AUTHORITY, STATE OF RHODE ISLAND, STATE OF VERMONT, STATE OF WASHINGTON, WISCONSIN ECONOMIC DEVELOPMENT CORPORATION,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Civ. No. 25-1738 C<br>(Senior Judge Smith) |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

ARGUMENT .................................................................................................................. 7

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

<u>Attachments</u>

Attachment A—Status Conf. Tr. (Oct. 18, 2025)............................................................1, 2, 6, 14

Attachment B—Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 102 (W.D. Wash. Dec. 5, 2025)............................................... *passim*

Attachment C—Letter from Michael D. Molina, Principal Deputy Assistant Administrator, U.S. EPA to Amy Gillespie, Grant Administrator & Compliance Officer, Maryland Clean Energy Center (Oct. 28, 2025) ....................................3

Attachment D—Mot. to Transfer Case, *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 97 (W.D. Wash. Nov. 19, 2025).........................................................................................4

Attachment E—Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. and Mot. for TRO, *Harris County v. U.S. EPA*, No. 1:25-cv-03646, ECF 20 (D.D.C. Nov. 10, 2025).................................................................................................................4

Attachment F—Defs.' Mot. to Transfer Venue, *R.I. AFL-CIO v. U.S. EPA*, No. 25-cv-00510, ECF 27 (D.R.I. Dec. 1, 2025) .....................................................................4

Attachment G—Pl.'s Mot. for Prelim. Inj., *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 64 (W.D. Wash. Nov. 14 2025)........................................................................4, 5

Attachment H—Protective Pet. for Rev., *Arizona v. U.S. EPA*, Nos. 25-1216, 25-1217, & 25-1218 (D.C. Cir. Oct. 20, 2025) ...................................................5–6, 14

Attachment I—Pet'rs' Joint Consent Mot. to Hold Consol. Cases in Abeyance, Nos. 25-1216, 25-1217, 25-1218 (D.C. Cir. Nov. 14, 2025) ................................................5, 14


<u>Cases</u>

*112 Genesee St., LLC v. United States*, 172 Fed. Cl. 426, 450 (2024), *leave to appeal granted*, No. 2025-108, 2025 WL 227349 (Fed. Cir. Jan. 17, 2025) ..........................12

*Am. Soybean Ass'n v. Regan*, 77 F.4th 873, 882 (D.C. Cir. 2023) ................................................6

*Brown v. United States*, 131 Fed. Cl. 540, 543 (2017)...................................................7–8, 12–13

*Centex Corp. v. United States*, 55 Fed. Cl. 381, 383 (2003), *aff'd*, 395 F.3d 1283 (Fed. Cir. 2005) ..........................................................................................................10

*Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) .......................................................................................................................... *passim*

*Cheshire Hunt, Inc. v. United States*, 149 Fed. Cl. 216, 221 (2020)................................9–10, 12

*Clearwater Hous. Auth. v. United States*, No. 13-6040C, 2017 WL 2544891, at *1 (Fed. Cl. June 13, 2017) .................................................................11

*Clinton v. Jones*, 520 U.S. 681, 708 (1997) ........................................7, 14

*Cosmo Constr. Co. v. United States*, 451 F.2d 602, 605 (Ct. Cl. 1971) ..............10–11

*Haddock v. United States*, 135 Fed. Cl. 82, 91 (2017)................................8, 12

*Hometown Fin. v. United States*, 53 Fed. Cl. 326, 338 (2002) ....................10

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)................................7, 9, 10

*Mata v. United States*, 107 Fed. Cl. 618, 624 (2012).....................1–2, 15–16

*Monbo v. United States*, 175 Fed. Cl. 440, 452 (2025)........................8, 9, 11

*Nat'l Food & Beverage Co. v. United States*, 96 Fed. Cl. 258, 269 (2010)...........2, 14

*NIH v. Am. Public Health Ass'n*, 606 U.S. —, 145 S. Ct. 2658 (2025) (mem.) ...........2, 3, 13

*Phillips v. United States*, 77 Fed. Cl. 513, 521 (2007)................................2

*Pub. Hous. Authorities Directors Ass'n v. United States*, 130 Fed. Cl. 522, 536 (2017)..................................................................11

*St. Bernard Parish Gov't v. United States*, 99 Fed. Cl. 765, 768, 771 (2011)...........15

*United States v. Tohono O'odham Nation*, 563 U.S. 307, 323 (2011) ..................3, 13

Filings

*Maryland Clean Energy Center v. United States* (Fed. Cl.)

Compl., ECF 1 ......................................................................3, 6

Ex. I to Compl., ECF No. 1-11 ....................................................3

Ex. J to Compl., ECF 1-12 ........................................................3

Mot. Stay, ECF 50........................................................... *passim*

*Arizona v. U.S. EPA* (W.D. Wash.)

Compl., ECF 1 ......................................................................4, 10

Pls.' Opp'n to Defs.' Mot. to Transfer Venue, ECF 103. ..........................4

*R.I. AFL-CIO v. U.S. EPA* (D.R.I.)

Resp. in Opp'n to Mot'n to Transfer Case, ECF 28....................................4

*Arizona v. U.S. EPA* (D.C. Cir.)

Clerk's Order (Nov. 20, 2025) ......................................................................................6


Statutes

5 U.S.C. § 706 ....................................................................................................................4

RCFC 1 ...............................................................................................................................14

RCFC 56 ......................................................................................................................10, 14


Regulations

2 C.F.R. § 200.344 ............................................................................................................12

## INTRODUCTION

Less than a week before its answer deadline, Defendant, the United States, has moved to indefinitely stay this litigation pending resolution of separate legal claims in a separate forum. Yet more than a month ago, Defendant represented to Plaintiffs and this Court at a status conference— while fully aware that "Plaintiffs in this case have a pending District Court case" seeking a reversal of the Environmental Protection Agency's ("EPA's") "position with regard to this Solar for All program," Attachment A—Status Conf. Tr. 7:10–13 (Oct. 18, 2025)—that they were "not suggesting that the case needs to be stayed or delayed." *Id.* at 8:10–11. Instead, Defendant "propose[d] that the Government respond to the Plaintiffs' complaint in the ordinary course when it's due on December 15." *Id.* at 8:14–16. The Court granted that request. *Id.* at 12:2–3. Nothing material has changed in the month since the status conference, except that the United States has argued that the district court in *Arizona v. EPA* "lacks jurisdiction" because "challenges to grant terminations are contract claims that must be pursued in the Court of Federal Claims." Attachment B—Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 102, at 19 (W.D. Wash. Dec. 5, 2025).

Defendant cannot have it both ways, telling the district court in *Arizona v. EPA* that only this Court has jurisdiction to hear claims related to termination of the Solar for All grants, while simultaneously asking this Court to stay such claims until the district court litigation is resolved. Indeed, the mismatch between the government's approach in both cases is exemplified by Defendant's characterization of relief: Defendant suggests to this Court that Plaintiffs' relief could by subsumed by a district court order granting relief—notably, relief that the district court plaintiffs do not even seek—yet argues to that same district court that such relief is beyond the court's authority to grant. As this Court has noted previously, when the United States takes "inconsistent

positions that both prolong resolution and increase expenses," such a "whipsaw litigation strategy . . . 'is unfair to the plaintiff'" and "wastes the resources of the plaintiff, the executive branch, and the judiciary." *Mata v. United States*, 107 Fed. Cl. 618, 624 (2012) (quoting *Phillips v. United States*, 77 Fed. Cl. 513, 521 (2007)) (criticizing United States for "trigger[ing] [a] transfer by arguing in the District Court that 'exclusive jurisdiction over [this] claim would lie in the Court of Federal Claims,' then "revers[ing] course and argu[ing] that this Court lack[ed] jurisdiction"). "Accepting the government's argument would . . . t[ie] up [Plaintiffs] in a procedural tangle" and merely "create a means for the federal government to avoid or delay paying compensation." *Nat'l Food & Beverage Co. v. United States*, 96 Fed. Cl. 258, 269 (2010). This Court should reject Defendant's attempt to "whipsaw the plaintiff[s] with inconsistent positions." *Mata*, 107 Fed. Cl. at 624.

These concerns aside, Defendant has clearly failed to meet its burden to establish a pressing need warranting an indefinite stay. Defendant has pointed to no hardship or inequity in having this case move forward, nor do Defendant's general concerns about duplicative litigation outweigh Plaintiffs' interest in timely review of their claims. There should be no dispute that this Court has jurisdiction over Plaintiffs' breach-of-contract claims, and Defendant does not suggest otherwise in its stay motion. Further, Justice Barrett's concurrence in *National Institutes of Health v. American Public Health Association*, 606 U.S. —, 145 S. Ct. 2658 (2025) (mem.)—a decision that Defendant does not once cite (despite relying on it extensively in the district court filing)— explicitly envisions the "[t]wo-track litigation" strategy Plaintiffs have pursued here. *Id.* at 2662 (Barrett, J., concurring).

This Court should reject Defendant's eleventh-hour effort to delay this litigation and deprive Plaintiffs of expeditious review of their claims.

## BACKGROUND

As Plaintiffs stated at the status conference, the EPA's decision to terminate the Solar for All program has resulted in "parallel," but "independent," challenges in several fora, including administrative disputes, lawsuits in federal district courts, protective petitions for review in the D.C. Circuit, and this case. Attachment A at 9:14–16; *see also* Compl., ECF 1, ¶ 15 n.1. Each forum involves different claims and seeks separate forms of relief. *Cf. NIH*, 145 S. Ct. at 2662 (Barrett, J., concurring) (noting that "'[t]he jurisdictional scheme governing actions against the United States' . . . 'often requires . . . plaintiffs to file two actions in different courts to obtain complete relief in connection with one set of facts'") (quoting *United States v. Tohono O'odham Nation*, 563 U.S. 307, 323 (2011) (Sotomayor, J., concurring in the judgment)).

1. *Administrative disputes.*  In early October, Plaintiffs filed notices of disagreement and administrative disputes with the EPA regarding their grant terminations. *See, e.g.*, Ex. I to Compl., ECF No. 1–11; Ex. J to Compl., ECF 1–12. The administrative disputes were filed pursuant to 2 C.F.R. § 1500.15, under which "[a]n Affected Entity or its authorized representative may dispute an Agency Decision by electronically submitting a Dispute to the [Dispute Decision Officer] identified in the Agency Decision."  Shortly after Plaintiffs filed this suit, the EPA sent substantively letters to Plaintiffs declaring their "administrative dispute as moot" in light of "a current lawsuit in place regarding the validity of the termination" of their Grant Agreements. *See, e.g.*, Attachment C—Letter from Michael D. Molina, Principal Deputy Assistant Administrator, U.S. EPA to Amy Gillespie, Grant Administrator & Compliance Officer, Maryland Clean Energy Center (Oct. 28, 2025).  The letters did not identify which lawsuit factored into its decision.

2. *District court litigation.*  On October 16, a group of States and the District of Columbia—representing all but one Plaintiff here—filed a lawsuit for declaratory and injunctive relief in the

United States District Court for the Western District of Washington.  Compl., *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 1 (W.D. Wash. Oct. 16, 2025).  The *Arizona* lawsuit challenges the EPA's decision to terminate the Solar for All program as unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; in violation of the U.S. Constitution's Appropriations Clause and separation of powers; and equitably *ultra vires*.  *Id.* at 26–33.  The plaintiffs in that case seek a declaration that the EPA's actions were unlawful; vacatur of the unlawful decisions; an order requiring Defendants to restore the Solar for All program and the EPA's administration of it; and an injunction preventing Defendants from making unavailable funds that were appropriated for Solar for All.  *Id.* at 33–34.  Contrary to Defendant's insinuation here, *see* Mot. Stay, ECF 50, at 5, the district court plaintiffs do *not* seek reinstatement of the grants.[1]

    In *Arizona v. EPA*, the plaintiffs moved for a preliminary injunction, seeking to prevent the EPA from reprogramming funds appropriated for the Solar for All program and from initiating closeout of Plaintiffs' grants.  Pls.' Mot. for Prelim. Inj., *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 64, at 2 (W.D. Wash. Nov. 14 2025).  In response, the United States argued that the district court "lacks jurisdiction to remedy grant termination, because such claims are contractual and belong in the Court of Federal Claims under the Tucker Act."  Attachment B at 19.  The United States has continually taken this position in district court challenges to the Solar for All program.

---

[1] Meanwhile, two other lawsuits have challenged the EPA's decisions to end the Solar for All program in U.S. district courts.  *See Harris County v. U.S. EPA*, No. 1:25-cv-03646 (D.D.C.); *R.I. AFL-CIO v. U.S. EPA*, No. 25-cv-00510. (D.R.I.).  The United States has sought to consolidate the three district court cases by transferring them to U.S. District Court for the District of Columbia.  *See* Mot. to Transfer Case, *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 97 (W.D. Wash. Nov. 19, 2025); Mot. to Transfer Case, *R.I. AFL-CIO v. U.S. EPA*, No. 25-cv-00510, ECF 27 (D.R.I. Dec. 1, 2025).  The plaintiffs in each case oppose the transfer motions.  *See* Pls.' Opp'n to Defs.' Mot. to Transfer Venue, *Arizona v. U.S. E.P.A.*, Case No. 25-cv-02015, ECF 103 (W.D. Wash. Dec. 10, 2025); Resp. in Opp'n to Mot. to Transfer Case, *R.I. AFL-CIO v. U.S. EPA*, No. 25-cv-00510, ECF 28 (D.R.I. Dec. 8, 2025).

*See also* Attachment D—Mot. to Transfer Case, *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 97, at 15 (W.D. Wash. Nov. 19, 2025) ("Defendants' position is that these claims are, at bottom, grant termination claims that belong in the Court of Federal Claims under the Tucker Act."); Attachment E—Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. and Mot. for TRO, *Harris County v. U.S. EPA*, No. 1:25-cv-03646, ECF 20, at 15 (D.D.C. Nov. 10, 2025) ("[T]he Court lacks jurisdiction over any challenge to the termination of Plaintiff's grant, because such claims are contractual and belong in the Court of Federal Claims under the Tucker Act."); Attachment F—Defs.' Mot. to Transfer Venue, *R.I. AFL-CIO v. U.S. EPA*, No. 25-cv-00510, ECF 27, at 7 (D.R.I. Dec. 1, 2025) ("[N]o district court has jurisdiction to adjudicate grant termination claims, which instead lie exclusively with the Court of Federal Claims, if anywhere.").

The district court plaintiffs, though, have made clear that they are not seeking contract damages—as Plaintiffs are in this Court—and that jurisdiction over their constitutional and statutory claims is proper in the district court. *See, e.g.*, Attachment G—Pl.'s Mot. for Prelim. Inj., *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 64, at 15 (W.D. Wash. Nov. 14 2025) ("Plaintiffs allege they are injured by Defendants' violations of statutes and the Constitution, not any breach of the grant terms, and they challenge Defendants' internal guidance and policies. Plaintiffs seek declaratory and injunctive relief, and APA remedies to vacate Defendants' illegal actions, not contract damages specific to each Plaintiff.") (internal citation omitted). Litigation over these issues remain pending.

3. *Administrative petition.* The district court plaintiffs also filed "protective" petitions for review in the D.C. Circuit of the EPA's unpublished final action terminating the Solar for All Program. Attachment H—Protective Pet. for Rev., *Arizona v. U.S. EPA*, Nos. 25-1216, 25-1217, & 25-1218 (D.C. Cir. Oct. 20, 2025). The petitions were filed "only as a precautionary measure

to preserve their right to judicial review in the event that jurisdiction is challenged" and the D.C. Circuit "is deemed the proper forum" under 42 U.S.C. § 7607(b)(1).[2]  *Id.* at 3.  With the EPA's consent, the petitioners moved to hold the D.C. Circuit petition in abeyance while the district court cases proceeded.  Attachment I—Pet'rs' Joint Consent Mot. to Hold Consol. Cases in Abeyance, Nos. 25-1216, 25-1217, 25-1218 (D.C. Cir. Nov. 14, 2025).  The D.C. Circuit granted that motion. Clerk's Order, Nos. 25-1216, 25-1217, 25-1218, (Nov. 20, 2025).

4. *This litigation.*  On October 15—before filing the district court action or petition for review in the D.C. Circuit—Plaintiffs filed this lawsuit against the United States seeking damages for the EPA's breach of the Solar for All Grant Agreements.  Compl., ECF 1.[3]  Plaintiffs' Complaint brought one count for breach of contract and one count for breach of the duty of good faith and fair dealing.  *Id.* at 29–32.  Plaintiffs sought money damages "in an amount to be determined at trial," "allowable pre- and post-judgment interest," and "reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412."  During a status conference on October 28, counsel for Plaintiffs represented their interest in moving forward with summary judgment briefing on liability, explaining that "the question that this Court will resolve is whether the EPA violated the provisions within the four corners of the contract," and that "this Court can resolve the case without looking at how the District Courts necessarily resolve th[e] questions" of whether

---

[2] Because "petitions for review must be filed within 60 days of the order being challenged," "it is common practice for parties to file a protective petition for review in the courts of appeals while simultaneously litigating in district court"—even when "[a]ll the parties agree [the court of appeals] lack[s] jurisdiction"—so that "litigants [who] guess wrong" are not "time barred from refiling in the proper forum."  *Am. Soybean Ass'n v. Regan*, 77 F.4th 873, 882 (D.C. Cir. 2023) (Rao, J., concurring).

[3] Plaintiffs filed this lawsuit before *Arizona v. EPA* was filed in the district court, so there is no jurisdictional bar to this Court under 28 U.S.C. § 1500, as Defendant concedes.  *See* Attachment A at 7:17-19 (counsel for Defendant noting that because the district court action "was filed a day after this Court of Federal Claims case[,]  . . . there's no Section 1500 problem").

"the EPA . . . acted arbitrar[ily], capricious[ly], [or] in excess of its authority." Attachment A at 9:5–7, 9:12–14, & 9:17–18. This Court subsequently issued a scheduling order directing Defendant to file an answer by December 15, 2025 (as Defendant requested, Attachment A at 8:14–16), and Plaintiffs to file their summary judgment motion by December 17.

Now, days before its answer is due, and over a month after the status conference, the United States has moved to stay this case pending resolution of the district court action in *Arizona v. EPA*, No. 2:25-cv-2015 (W.D. Wash.). The only intervening events to which Defendant points are the filing of the protective petition in the D.C. Circuit, and the filing of a preliminary injunction motion in *Arizona v. EPA*.

## ARGUMENT

The party moving for a stay "bears the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), and "must make out a clear case of hardship or inequity in being required to go forward," *Landis*, 299 U.S. at 255. In "the absence of a pressing need," then, a "trial court abuses its discretion by issuing 'a stay of indefinite duration.'" *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Ultimately, this Court must "weigh competing interests and maintain an even balance," operating under the "paramount obligation to exercise jurisdiction timely in cases properly before it." *Id.* at 1416.

Under this standard, Defendant has plainly failed to meet its burden. To start, Defendant has not established any "hardship or inequity in being required to move forward." *See Landis*, 299 U.S. at 255. Indeed, not once in its motion does the Defendant even mention a hardship or inequity, which is reason enough to deny the motion. *See Brown v. United States*, 131 Fed. Cl. 540, 543 (2017) (denying stay motion where government "ha[d] not alleged an 'inequity'" and "the only

'hardship' suggested by defendant is that it might need to expend additional resources to prepare and submit new briefs"). At most, Defendant raises the general difficulty in having to litigate two cases, but "the prospect of concurrent or additional litigation is not on its own a hardship," particularly for a defendant as well-resourced as the federal government. *Monbo v. United States*, 175 Fed. Cl. 440, 452 (2025).

Further, timeliness weighs in favor of denying the stay. In requesting to stay this action pending resolution of the district court action in *Arizona v. EPA*, Defendant has effectively sought an indefinite stay. *See Monbo*, 175 Fed. at 451 (2025) ("A stay issued pending final resolution of another case is considered indefinite.") (quotations and citation omitted). Multiple preliminary matters have been raised in that case, including outstanding motions for a preliminary injunction and to transfer the case, and "it is uncertain how long those proceedings may take." *Haddock v. United States*, 135 Fed. Cl. 82, 91 (2017). To stay this case pending *Arizona v. EPA*'s "indefinite schedule would go against everything the Plaintiffs are requesting—a timely resolution." *Id.*; *see also Brown*, 131 Fed. Cl. at 543 ("Plaintiffs' expressed desire to move forward with the resolution of this case at this time should be honored."). It would also go against Defendant's steadfast position, expressed in each district court case, that jurisdiction is proper in this Court to resolve contractual claims for monetary damages stemming from grant terminations. *See, e.g.*, Attachment B at 19.

Not even attempting to satisfy the legal standard for a stay, Defendant instead argues that a stay is warranted due to concerns over judicial economy, to avoid the possibility of conflicting orders, and because a stay would work no prejudice on Plaintiffs. Each of these arguments fails.

1. *Judicial economy.* Defendant asserts that "[p]rinciples of judicial economy strongly favor a stay." Mot. Stay, ECF 50, at 1–2. That consideration alone is insufficient, because the

desire to "avoid duplicative litigation and conserve judicial resources . . . falls short of the 'pressing need' required when a trial court seeks to suspend its proceedings indefinitely." *Cherokee Nation*, 124 F.3d at 1416 (quoting *Landis*, 299 U.S. at 255); *accord Monbo*, 175 Fed. Cl. at 452.

Moreover, an indefinite stay at this stage of the litigation would not conserve judicial resources because the legal claims in each case are distinct. Count I of this lawsuit is a breach-of-contract claim that turns on questions of contract interpretation within the four corners of the Solar for All Grant Agreements; the claims in *Arizona v. EPA*, though involving some of the same facts, are brought under the APA and Constitution and turn on questions of statutory interpretation. Indeed, Defendant does not even argue that the outcome of *Arizona v. EPA* is necessary for this Court to resolve the question of liability under Count I, arguing only that "the pending proceedings in the district court will directly affect any *relief* plaintiffs can obtain from this Court." *See, e.g.*, Mot. to Stay, ECF 50, at 5 (emphasis added). It makes sense that Defendant would not claim that the district court proceedings could affect liability here, as the claims in each suit "are based on different law." *Monbo*, 175 Fed. Cl. at 452. There is no reason to delay summary judgment briefing on liability.

To suggest otherwise, Defendant mischaracterizes the relief sought by the plaintiffs in *Arizona v. EPA*. For instance, Defendant mistakenly asserts that "Plaintiffs are, at this very moment, seeking overarching relief from the district court that subsumes the relief they seek here." Mot. Stay, ECF 50, at 5. Not so. Plaintiffs in this case have requested a different form of relief (monetary relief) than the plaintiffs in *Arizona v. EPA* (injunctive and declaratory relief), which also weighs against granting the stay. *See Cheshire Hunt, Inc. v. United States*, 149 Fed. Cl. 216,

221 (2020) ("Different requests for relief, particularly legal versus equitable relief, point towards denying a stay because the cases are substantially different.").

Similarly, Defendant repeatedly suggests that Plaintiffs' damages claim could be mooted if the district court orders the EPA to reinstate Plaintiffs' grants. *E.g.*, Mot. Stay, ECF 50, at 1, 5. But this argument attacks a straw man, because the plaintiffs in *Arizona v. EPA* have not sought reinstatement of the grants, *see* Compl., *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 1 (W.D. Wash. Oct. 16, 2025), and the United States has argued that the district court could not grant that relief. *See* Attachment B at 6 (noting the district court litigation "cannot undo grant termination" and that vacating the unlawful action "will not reinstate Plaintiffs' grants"). Given that neither side has asserted that the district court could reinstate the grants, the far-fetched possibility that the court might order relief sought by no one cannot create a "pressing need" for an indefinite stay. *See Cherokee Nation*, 124 F.3d at 1416 (quoting *Landis*, 299 U.S. at 255).

Defendant also complains that "[e]xpending the time and resources to litigate liability now, only to save damages for an indefinite point in the future," would be inefficient because this process "does not result in any relief to plaintiffs." Mot. Stay, ECF 50, at 6. But as Defendant well knows, bifurcating cases into a liability phase and a damages phase is common practice in this Court. *See, e.g.*, *Centex Corp. v. United States*, 55 Fed. Cl. 381, 383 (2003) (resolving damages after liability), *aff'd*, 395 F.3d 1283 (Fed. Cir. 2005); *Hometown Fin. v. United States*, 53 Fed. Cl. 326, 338 (2002) (same); *Cosmo Constr. Co. v. United States*, 451 F.2d 602, 605 (Ct. Cl. 1971) ("It is, of course, customary to hear a case such as this on the merits (*i.e.*, the issue of liability), separate and apart from and prior to the issue of quantum . . . ."); *see also* RCFC 56(a) ("A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought"). Proceeding in this fashion often conserves judicial resources, as it would

here, because a decision in Plaintiffs' favor might eliminate the need for discovery to resolve Count II and could allow the parties to resolve "the issue of quantum . . . by less formal procedures" or settlement. *See Cosmo Constr. Co.*, 451 F.2d at 605. Indeed, by way of example, in *Clearwater Housing Authority v. United States*, the plaintiffs moved for partial summary judgment on one count, the court granted summary judgment on that count, the parties entered a stipulation as to damages, and the court subsequently entered a final judgment in accordance with the stipulation, dismissing the remaining counts of the complaint as moot. *See Pub. Hous. Authorities Directors Ass'n v. United States*, 130 Fed. Cl. 522, 536 (2017) (granting summary judgment); *Clearwater Hous. Auth. v. United States*, No. 13-6040C, 2017 WL 2544891, at *1 (Fed. Cl. June 13, 2017) (ordering judgment).

. Even if the district court proceeding could affect the amount of damages that Plaintiffs could recover here, "the United States cannot justify a stay of the proceedings on liability merely because a precise determination of the damages is not possible at this moment." *Cherokee Nation*, 124 F.3d at 1417. Defendant's request for a stay focuses only on the "*relief* plaintiffs can obtain from this Court," Mot. Stay, ECF 50, at 5 (emphasis added), and it is at best premature when directed at Plaintiffs' motion for summary judgment on liability. [4]

2. *Uncertainty*. Nor is a stay justified by the (remote) possibility of conflicting orders. The government has raised these general concerns before, yet courts have repeatedly found that "the interest of timeliness outweighs any potential for inconsistent resolution." *Monbo*, 175 Fed. Cl. at

---

[4] Although Defendant is correct that some rulings by the district court conceivably might affect the extent of Plaintiffs' damages, the specific example it offers is inapposite. If the district court allows the EPA to proceed with closeout over Plaintiffs' objections, and Plaintiffs ultimately prevail in this case, then that would increase, not "narrow, . . . any damages plaintiffs can seek here." *Contra* Mot. Stay, ECF 50, at 5. The expectancy value of Plaintiffs' wrongly terminated Solar for All Grant Agreements would be compounded by the consequential harms of prematurely breaking Plaintiffs' subgrants and interrupting their Solar for All projects.

453; *accord Haddock*, 135 Fed. Cl. at 91; *see also Cheshire Hunt*, 149 Fed. Cl. at 222 ("It is not enough for the Court to grant a stay merely to resolve the disputes in as few proceedings as possible. Resolving the disputes with an eye towards timeliness is more important.").

What's more, Defendant's concerns about being held to incompatible standards do not withstand scrutiny. Indeed, even in suggesting hypothetical scenarios, Defendant are unable to imagine a real likelihood of conflicting orders. First, Defendant suggests a scenario "where the district court reinstates plaintiffs' grant agreements after finding their terminations unlawful, but this Court denies plaintiffs' summary judgment motion." Mot. Stay, ECF 50, at 6. As discussed above, however, the plaintiffs in *Arizona v. EPA* have not sought reinstatement of the grants and Defendant has argued that the district court cannot grant it. The second hypothetical involves a situation "where the district court grants plaintiffs' request to stay the closeout process," but this Court "orders the EPA to pay some of those same costs." *Id.* at 6. This situation again presents a premature concern, given Plaintiffs only intend to move for summary judgment on liability at this time. Also, even under Defendant's hypothetical, the United States would not really be presented with conflicting orders because any satisfaction of this Court's judgment for damages would not be specific performance of the Grant Agreement's "closeout process" but would instead be money damages paid out by the government. *Contra* Mot. Stay, ECF 50, at 6; *see, e.g.*, *112 Genesee St., LLC v. United States*, 172 Fed. Cl. 426, 450 (2024) ("Money damages are paid out of the Judgment Fund and are not orders for the award of money from any other specific funds."), *leave to appeal granted*, No. 2025-108, 2025 WL 227349 (Fed. Cir. Jan. 17, 2025); *cf.* 2 C.F.R. § 200.344.

At bottom, Defendant's hypotheticals about how each of these cases might play out only reinforce the conclusion that a stay is not proper. "Whether these events will occur is unknown,"

and "[i]n light of this uncertainty, the actual hardship that defendant might face cannot be ascertained." *Brown v. United States*, 131 Fed. Cl. at 543.

Lastly, while Defendant blames Plaintiffs for creating a risk of "conflict . . . by pursuing simultaneous relief from two courts," Mot. Stay, ECF 50, at 5–6, it ignores that this approach was discussed by Justice Barrett in *National Institutes of Health v. American Public Health Association*. Justice Barrett, in concurrence, suggested that "challenges to the grant terminations belong in the [Court of Federal Claims]," but "APA challenges" to the underlying agency decisions "belong in district court." 145 S. Ct. at 2662 (Barrett, J., concurring). Justice Barrett explicitly envisioned that plaintiffs might need "to file two actions in different courts to obtain complete relief in connection with one set of facts." *Id.* (quoting *Tohono O'odham Nation*, 563 U.S. at 323 (Sotomayor, J., concurring in the judgment)). Any inconvenience to Defendant from this "[t]wo-track litigation results from '[t]he jurisdictional scheme governing actions against the United States,'" *id.* (quoting *Tohono O'odham Nation*, 563 U.S. at 323 (Sotomayor, J., concurring in the judgment)), which Defendant has insisted requires different claims to be brought in different courts. *See, e.g.*, Attachment B at 22 (W.D. Wash. Dec. 5, 2025). Plaintiffs are simply following the suggested path to obtain full relief for the federal government's unprecedentedly widespread breach of its obligations.

3. *Harm to plaintiffs*. Contrary to Defendant's assertion, Mot. Stay, ECF 50, at 7, Plaintiffs will be harmed by a stay of proceedings. Plaintiffs brought this lawsuit with the goal of obtaining relief for the government's breach of billions of dollars' worth of grant agreements. And Plaintiffs indicated their desire to move directly for summary judgment because, as will be shown in briefing, Plaintiffs are entitled to judgment on Count I as a matter of law. Every day of delay is a day that

Plaintiffs are deprived of billions of dollars—that the EPA was contractually obligated to provide—to help lower energy costs for disadvantaged and low-income communities.

Defendant nonetheless argues that there's no harm to delay because "[i]t is the norm . . . for substantial time to elapse between the filing of a complaint and summary judgment briefing." Mot. Stay, ECF 50, at 7. But that norm simply reflects that parties often seek discovery before moving for summary judgment, which is not necessary for a claim such as Count I that presents "a pure question of law that is ripe for briefing at summary judgment." *See* Attachment A at 6:18-20; *see also* RCFC 56(b) (allowing "a party [to] file a motion for summary judgment at any time"). That argument also diminishes "the court's paramount obligation to exercise jurisdiction timely in cases properly before it." *Cherokee*, 124 F.3d at 1416. Indeed, as this Court stated at the status conference, "the goal not only is justice, but expeditious justice, because if it's too long, it isn't justice anymore." Attachment A at 11:6–11. "[W]here there is no possibility for duplicative or conflicting decisions by the district court and this court"—as is the case here—"[e]ntering a stay . . . would disserve the goal of a 'just, speedy, and inexpensive determination' of this action." *Nat'l Food & Beverage Co.*, 96 Fed. Cl. at 269 (quoting RCFC 1). Moreover, it is Defendant's burden to justify a stay, not Plaintiff's burden to contest one. *Clinton*, 520 U.S. at 708. Defendant has not identified any compelling reason to delay summary judgment briefing with respect to liability on Count I: It has not asserted a need for discovery and has not contended that the United States' liability turns on the outcome of *Arizona v. EPA*. A stay therefore would be "effective only to consume time." *Nat'l Food & Beverage Co.*, 96 Fed. Cl. at 269.

Finally, Defendant misquotes the consent motion to stay filed in the D.C. Circuit to suggest that Plaintiffs believe no party would be prejudiced by a stay here. S*ee* Mot. Stay, ECF 50, at 7. That motion is wholly irrelevant to the stay sought by Defendants in this Court. As explained

above, the plaintiffs in *Arizona v. EPA* filed a petition for review in the D.C. Circuit purely as a "protective" measure, "believ[ing] that the district courts have jurisdiction and are a proper forum to review challenges to the EPA's termination of the SFA program." Attachment H at 2. Those plaintiffs contended that the case "properly belong[ed] in district court"; the EPA did not argue otherwise; and all parties consented to the requested stay. Attachment I at 5. Here, conversely, these breach-of-contract claims are properly before this Court (as Defendant has already contended), and Plaintiffs do not consent to the requested stay. Unlike with the protective D.C. Circuit petition, which is unlikely to go forward, "[a]n indefinite stay of this case . . . would significantly prejudice the Plaintiffs' right to have their claims against the Government heard in this [C]ourt." *See St. Bernard Parish Gov't v. United States*, 99 Fed. Cl. 765, 768, 771 (2011).

Indeed, the harm to Plaintiffs in granting a stay would be magnified by the government's repeated efforts to avoid resolving Plaintiffs' claims on the merits. First, the EPA shut the door to Plaintiffs' administrative disputes, dismissing them as "moot" because Plaintiffs had filed suit over the termination of the grant agreements (and possibly in response to this very suit). Then, in district court, the United States argued that jurisdiction is lacking because "challenges to grant terminations are contract claims that must be pursued in the Court of Federal Claims." Attachment B at 19. Now, days before its response deadline, the government has reversed course and argued that this case—brought in what the United States has repeatedly said is the correct forum—should be stayed because of the possibility that the district court might order reinstatement of the grants, a remedy that the plaintiffs in that case have not sought in district court and that the federal government has repeatedly argued is unavailable there.

This stay motion represents another installment of the government's "whipsaw litigation strategy" designed to keep any court from resolving these claims on the merits. *See Mata*, 107

Fed. Cl. at 624. This Court should reject the government's attempt to evade accountability for its breach of the Solar for All Grant Agreements, and have the case proceed in accordance with the schedule to which the parties previously agreed.

## CONCLUSION

For the reasons discussed above, this Court should deny Defendant's motion to stay this litigation.

This Court should also deny Defendant's alternative request to toll its deadline to respond to Plaintiffs' Complaint until seven days after a denial of its motion. Defendant already has had most of the 60 days that it requested to prepare a response to the Complaint. If Defendant indeed seeks only a "modest extension," Mot. Stay, ECF 50, at 7, then Plaintiffs have represented that they would consent to a seven-day extension of time for Defendant to file its answer until December 22, along with a commensurate extension of Plaintiffs' time to file their motion for summary judgment to December 24. *See id.* at 2. Defendant has not shown any basis to extend its response deadline indefinitely until such time as the Court is able to rule on Defendant's last-minute request for a stay.

Dated: December 11, 2025                              Respectfully submitted,

**ANTHONY G. BROWN**                          **KRISTIN K. MAYES**
ATTORNEY GENERAL OF MARYLAND          ATTORNEY GENERAL OF ARIZONA

By: */s/ Lauren Gorodetsky*                    By */s/ Joshua A. Katz*
Lauren Gorodetsky*                              Mary M. Curtin
Keith M. Jamieson*                                 *Senior Litigation Counsel*
  *Assistant Attorneys General*               Joshua A. Katz*
Office of the Attorney General                    *Assistant Attorney General*
200 Saint Paul Place                              Office of the Arizona Attorney General
Baltimore, Maryland  21202                      2005 N. Central Ave.
(410) 576-7057                                      Phoenix, Arizona 85004
LGorodetsky@oag.state.md.us                   (602) 542-7000

kjamieson@oag.state.md.us

*Counsel for the Maryland Clean Energy Center*

**ROB BONTA**
ATTORNEY GENERAL OF CALIFORNIA

By: */s/ Dylan C. Redor*
Dylan C. Redor*
Theodore A. McCombs
Myung Park
Marie Logan
Rebecca Hunter
Abigail Blodgett
   *Deputy Attorneys General*
California Department of Justice
300 S. Spring St.
Los Angeles, CA  90013
(213) 269-6706
dylan.redor@doj.ca.gov

*Counsel for the California Public Utilities Commission*

**WILLIAM TONG**
ATTORNEY GENERAL OF CONNECTICUT

By: */s/ Jill Lacedonia*
Jill Lacedonia*
   *Assistant Attorney General*
Connecticut Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5250
jill.lacedonia@ct.gov

*Counsel for the State of Connecticut*

Mary.curtin@azag.gov
Joshua.Katz@azag.gov

*Counsel for the State of Arizona*

**PHILIP J. WEISER**
ATTORNEY GENERAL OF COLORADO

By: */s/ Carrie Noteboom*
Carrie Noteboom
   *Assistant Deputy Attorney General*
David Moskowitz*
   *Deputy Solicitor General*
Cynthia Vitale
   *Assistant Attorney General*
Colorado Office of the Attorney General
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO  80203
(720) 508-6000
Carrie.Noteboom@coag.gov
David.Moskowitz@coag.gov
Cynthia.Vitale@coag.gov

*Counsel for the State of Colorado*

**BRIAN L. SCHWALB**
ATTORNEY GENERAL FOR THE DISTRICT OF
   COLUMBIA

By: */s/ William Stephens*
William Stephens*
   *Assistant Deputy Attorney General*
Lauren Marks
Lauren Cullum
   *Special Assistant Attorneys General*
Office of the Attorney General for the District
   of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C.  20001
William.Stephens@dc.gov
Lauren.marks@dc.gov
lauren.cullum@dc.gov

17

*Counsel for the District of Columbia*

**ANNE E. LOPEZ**
ATTORNEY GENERAL OF HAWAIʻI

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
 *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
 *Solicitor General*
Hawaiʻi Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
THE COMMONWEALTH OF KENTUCKY

By:  */s/ S. Travis Mayo*
S. Travis Mayo
 *General Counsel*
Taylor Payne
 *Chief Deputy General Counsel*
Laura C. Tipton
 *Deputy General Counsel*
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**ANDREA JOY CAMPBELL**

**KWAME RAOUL**
ATTORNEY GENERAL OF ILLINOIS

By: */s/ Katharine Roller*
Katharine Roller*
 *Complex Litigation Counsel*
Elizabeth B. Scott*
 *Assistant Attorney General*
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
(773) 519-1842
Katharine.roller@ilag.gov

*Counsel for Illinois Finance Authority*

**AARON M. FREY**
ATTORNEY GENERAL OF MAINE

By: */s/ Caleb Elwell*
Caleb E. Elwell
 *Assistant Attorney General*
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8545
Caleb.elwell@maine.gov

*Counsel for the State of Maine*

**DANA NESSEL**

ATTORNEY GENERAL OF MASSACHUSETTS

By: /s/ Amy Laura Cahn
Amy Laura Cahn*
Molly Teague
   *Special Assistant Attorneys General*
Terrence Vales
   *Assistant Attorney General*
Katherine Dirks*
   *Chief State Trial Counsel*
Vanessa Arslanian
   *State Trial Counsel*
One Ashburton Place
Boston, MA 02108
(617) 963-2277
amy.laura.cahn@mass.gov
molly.teague@mass.gov
terrence.vales@mass.gov
katherine.dirks@mass.gov
vanessa.arslanian@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**KEITH ELLISON**
ATTORNEY GENERAL OF MINNESOTA

By: /s/ Ryan Pesch
Ryan Pesch
Cat Rios-Keating
   *Special Assistant Attorneys General*
Brian Carter
   *Special Counsel*
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-728-7116
ryan.pesch@ag.state.mn.us
catherine.rios-keating@ag.state.mn.us
brian.carter@ag.state.mn.us

*Counsel for the State of Minnesota*

ATTORNEY GENERAL OF MICHIGAN

By: /s/ Neil Giovanatti
Neil Giovanatti*
Polly Synk*
   *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
SynkP@michigan.gov

*Counsel for the State of Michigan*

**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA

By: /s/ K. Brunetti Ireland
K. Brunetti Ireland*
   *Chief Deputy Attorney General*
   *Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for Nevada Clean Energy Fund*

**MATTHEW J. PLATKIN**
ATTORNEY GENERAL OF NEW JERSEY

By: */s/ Daniel Resler*
Daniel Resler
Lauren E. Van Driesen
Jack Ventura
   *Deputy Attorneys General*
Office of the Attorney General
33 Washington Street, Ninth Floor
Newark, NJ 07101
(973) 648-4726
Daniel.Resler@law.njoag.gov

*Counsel for the State of New Jersey*

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

By: */s/ Matthew Eisenson*
Matthew Eisenson*
Kelsea Suarez*
   *Assistant Attorneys General*
Environmental Protection Bureau
Office of the Attorney General
28 Liberty Street, 19th Floor
(212) 416-8481
matthew.eisenson@ag.ny.gov

*Counsel for the New York State Energy
Research and Development Authority*

**DAN RAYFIELD**
ATTORNEY GENERAL OF OREGON

By: */s/ Coby Howell*
Coby Howell
   *Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000

**RAÚL TORREZ**
ATTORNEY GENERAL OF NEW MEXICO

By: */s/ J. Spenser Lotz*
J. Spenser Lotz*
   *Assistant Attorney General*
Environmental Protection Bureau
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 616-7560
slotz@nmdoj.gov

*Counsel for the State of New Mexico*

**JEFF JACKSON**
ATTORNEY GENERAL OF NORTH CAROLINA

**LAURA HOWARD**
CHIEF DEPUTY ATTORNEY GENERAL

By /s/ Daniel T. Wilkes
Daniel T. Wilkes*
   *Assistant Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
(919) 716-6415
dwilkes@ncdoj.gov

*Counsel for the State of North Carolina*

**PENNSYLVANIA ENERGY
DEVELOPMENT AUTHORITY**

By: */s/ Michael J. Heilman*
Michael J. Heilman
   *Litigation Coordinator*
Michael A. Braymer
   *Chief Counsel*
Pennsylvania Department of Environmental
Protection

coby.howell@doj.oregon.gov

*Counsel for the State of Oregon*

Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222
Phone: 412-442-4241
Email: mheilman@pa.gov

*Counsel for Pennsylvania Energy
Development Authority*

**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

By: */s/ Nicholas M. Vaz*
Nicholas M. Vaz
    *Special Assistant Attorney General*
Office of the Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
ATTORNEY GENERAL OF VERMONT

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
    *Solicitor General*
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
Jonathan.rose@vermont.gov

*Counsel for the State of Vermont*

**NICHOLAS W. BROWN**
ATTORNEY GENERAL OF WASHINGTON

By: */s/ C. L. Junine So*
C. L. Junine So*
Sarah E. Smith-Levy*
Leah A. Brown
    Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
(206) 464-7744
junine.so@atg.wa.gov
sarah.e.smith-levy@atg.wa.gov
leah.brown@atg.wa.gov

*Counsel for the State of Washington*

**WISCONSIN ECONOMIC
DEVELOPMENT CORPORATION**

By: */s/ Jennifer H. Campbell*
Jennifer H. Campbell
    *Chief Legal Officer*
2352 S. Park St., Suite 303
Madison, WI 53713
(608) 210-6811
jennifer.campbell@wedc.org

*Counsel for Wisconsin Economic
Development Corporation*

*\* Admitted to appear in this Court on behalf of Plaintiffs*

21