**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MARYLAND CLEAN ENERGY CENTER, STATE OF ARIZONA, CALIFORNIA PUBLIC UTILITIES COMMISSION, STATE OF COLORADO, STATE OF CONNECTICUT, DISTRICT OF COLUMBIA, STATE OF HAWAI'I, ILLINOIS FINANCE AUTHORITY, OFFICE OF THE GOVERNOR *EX REL*. ANDY BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF KENTUCKY, STATE OF MAINE, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, NEVADA CLEAN ENERGY FUND, STATE OF NEW JERSEY, STATE OF NEW MEXICO, NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY, STATE OF NORTH CAROLINA, STATE OF OREGON, PENNSYLVANIA ENERGY DEVELOPMENT AUTHORITY, STATE OF RHODE ISLAND, STATE OF VERMONT, STATE OF WASHINGTON, WISCONSIN ECONOMIC DEVELOPMENT CORPORATION, | Civ. No. 25-cv-01738 (Consolidated with No. 26-268) (Senior Judge Smith) |

Plaintiffs,

v.

VIRGINIA DEPARTMENT OF ENERGY,

Consolidated Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

**DECLARATION OF JANINE BENNER**

1. I am a resident of the State of Oregon.

2. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

3. I am the Director at the Oregon Department of Energy.

4. I hold a bachelor's degree in history from Princeton University. I began my career in energy by serving as staff to Congressman Earl Blumenauer (OR-CD 3) for 12 years, first as an energy and environmental policy advisor and later as deputy chief of staff. I subsequently served at the U.S. Department of Energy, first as Deputy Assistant Secretary for House Affairs in the Office of Congressional and Intergovernmental Affairs and later as Associate Assistant Secretary in the Office of Energy Efficiency & Renewable Energy. In February 2017, I joined the Oregon Department of Energy as Assistant Director for the Energy Planning & Innovation Division. I was appointed Director by Governor Kate Brown in January 2018 and confirmed by the Oregon Senate the following month. In my current role, I lead a team of more than 120 employees and manage a biennial budget exceeding $200 million.

5. In my capacity as Director of the Oregon Department of Energy, I am responsible for among other things, the agency's budget, statewide energy planning and data, and administration of incentive programs that promote decarbonization and community resilience.

6. I submit this declaration in connection with Plaintiffs' Motion for Summary Judgment. I have personal knowledge of the matters set forth below, or with respect to the matters for which I do not have personal knowledge, I have reviewed information gathered from others within the Oregon Department of Energy.

7. The Oregon Department of Energy is a state agency that was created in 1975. The Oregon Department of Energy serves as a central repository for energy data, information, analysis

1

and as a venue for problem-solving Oregon's energy challenges. The agency provides energy education and technical assistance, regulation and oversight, and energy programs and activities. The Oregon Department of Energy provides policy expertise to prepare for Oregon's future energy needs and technical and financial resources to encourage adoption of and investment in energy efficiency, energy resilience, and renewable energy resources.

8.      The U.S. Environmental Protection Agency ("EPA") issued a Grant Agreement, Grant No. 5H-84092901, identifying the Oregon Department of Energy as a recipient and payee. The Grant Agreement provided that the EPA was awarding $86.6 million to the Oregon Department of Energy based on its Solar for All application.  The Grant Agreement attached a special payment condition to this award, whereby the Oregon Department of Energy could draw down no more than 2% of the EPA award until after the EPA reviewed a revised Workplan and other documents.  The date of the award was July 8, 2024, and the mailing date was July 11, 2024. The Grant Agreement stated that the recipient demonstrates its commitment to carry out the award by either drawing down funds within 21 days of the EPA award or amendment mailing date or not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date.  The Grant Agreement also contained a termination provision, providing that the EPA had the right to terminate only as specified in 2 C.F.R. § 200.339 and § 200.340, when the noncompliance with the terms and conditions is substantial such that effective performance of the assistance agreement is materially impaired or there is sufficient evidence of waste, fraud, or abuse.

9.      The Oregon Department of Energy demonstrated its commitment to carry out the award by not filing a notice of disagreement within 21 days of July 11, 2024.

10.    On January 15, 2025, the EPA authorized the Oregon Department of Energy's Automated Standard Application for Payment ("ASAP") account with a balance of $86,200,000.

11.    The Oregon Department of Energy submitted a revised Workplan and other required documents to the EPA on November 8, 2024.

12.    Subsequently, the EPA issued an Assistance Amendment to the Oregon Department of Energy.  The date of the Assistance Amendment was January 8, 2025, and the mailing date was January 8, 2025.  The Assistance Amendment removed the 2% restriction from the Solar for All award. The Assistance Amendment, like the original Grant Agreement, provided that the recipient demonstrates its commitment to carry out the award by either drawing down funds within 21 days of the EPA award or amendment mailing date or not filing a notice of disagreement with the award terms and conditions within 21 days after the EPA award or amendment mailing date.  The Assistance Amendment also amended the Grant Agreement's termination provision, which was updated to (1) incorporate by reference October 1, 2024 amendments to 2 C.F.R. § 200.340, (2) add "material misrepresentation of eligibility status" as a ground for termination, and (3) add the EPA's agreement to re-obligate funds to an eligible recipient.  Finally, the Assistance Amendment added a new provision stating that the EPA will not determine that recipient has failed to comply with the terms and conditions of the agreement without providing a reasonable opportunity to remedy under 2 C.F.R. § 200.208.

13.    The Oregon Department of Energy demonstrated its commitment to carry out the award by not filing a notice of disagreement within 21 days of January 8, 2025.

14.    Beginning on February 24, 2025, the Oregon Department of Energy withdrew a series of payments from its ASAP account totaling $413,866.07 to pay for allowable costs.

15.     On August 7, 2025, the Oregon Department of Energy received a letter from the EPA announcing that it was terminating Assistance Agreement No. 5H-84092901 awarded to the Oregon Department of Energy.  On August 8, 2025, the EPA sent the Oregon Department of Energy an Assistance Amendment terminating the award.  Neither the August 7, 2025, letter nor the August 8, 2025, Assistance Agreement referenced any issues related to performance, noncompliance, waste, fraud, abuse, or misrepresentation of eligibility.

16.     On August 11, 2025, the EPA withdrew $79,781,104.55 from the Oregon Department of Energy's ASAP account.

17.     On August 28, 2025, the Oregon Department of Energy submitted a letter to the EPA to notify of its disagreement with the Assistance Amendment.  On September 5, 2025, the Oregon Department of Energy submitted a formal dispute to the EPA pursuant to 2 C.F.R. § 1500.15.

18.     On September 11, 2025, the EPA sent an email acknowledging the Oregon Department of Energy's formal dispute and said no additional documentation was necessary.  The email stated that a decision would be issued regarding this dispute by February 24, 2026.

19.     On September 30, 2025, the Oregon Department of Energy withdrew $112,042.18 from its ASAP account for allowable expenses incurred before the termination date.

20.     On October 23, 2025, the EPA sent a letter to the Oregon Department of Energy declaring its administrative dispute as moot.

21.     As of the date of this declaration, the Oregon Department of Energy has never received any cure notices, notices of noncompliance, notices of deficiencies, or any other written communications from the EPA indicating that the EPA had concerns with the Oregon Department of Energy's performance or compliance.  The Oregon Department of Energy also has never

4

received any notices from the EPA about evidence of waste, fraud, or abuse or about misrepresentation of eligibility status.

22.    Since the termination, the Oregon Department of Energy has paused all efforts to implement Solar for All. The Oregon Department of Energy used SFA funding to hire two employees. Those employees lost their Solar for All positions at the Oregon Department of Energy on August 11, 2025. A planned hiring of a third staff person has not happened. Due to this loss of funding, the Oregon Department of Energy will be forced to cancel the $22,817,732 subaward contract with Energy Trust of Oregon, which will likely result in harm to that organization. Similarly, without this funding, the Oregon Department of Energy has not been able to sign a contract for $14,559,822 with Bonneville Environmental Foundation to deliver services. Instead, a contract for $146,824.85 was signed to reimburse Bonneville Environmental Foundation for allowable expenses incurred before the termination date, however, the Oregon Department of Energy's ASAP account was suspended before the allowable expenses could be withdrawn.

23.    A true and correct copy of the Oregon Department of Energy's Initial Grant Agreement is attached as Exhibit C to the Complaint, ECF 1-5, at 703–740. A true and correct copy of the Oregon Department of Energy's Solar for All Work Plan is attached as Exhibit D to the Complaint, ECF 1-6, at 772–825. A true and correct copy of the Oregon Department of Energy's Amended Grant Agreement is attached as Exhibit E to the Complaint, ECF 1-7, at 852–897. A true and correct copy of the Oregon Department of Energy's ASAP Account Statement is attached as Exhibit F to the Complaint, ECF 1-8, at 41. A true and correct copy of the Oregon Department of Energy's Termination Memorandum is attached as Exhibit G to the Complaint, ECF 1-9, at 56–57. A true and correct copy of the Oregon Department of Energy's Termination Amendment is attached as Exhibit H to the Complaint, ECF 1-10, at 124–129. The copy of the

5

Oregon Department of Energy's ASAP Account Statement, previously attached as Exhibit F to the

Complaint, ECF 1–8, at 41, did not reflect a withdrawal of $112,042.18 on September 30, 2025,

for allowable expenses incurred before the termination date. A true and correct copy of the updated

ASAP Account Statement is reattached to this declaration as Exhibit 1.

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.

Executed on May 5, 2026 at Salem, Oregon

_____

Declarant

6

# EXHIBIT 1

4/29/26, 2:14 PM                                          AccountBalanceInq-v1.0_4-29-2026

**SENSITIVE BUT UNCLASSIFIED**



**Account Balance Inquiry**

Date: 04/29/2026
Time: 5:10 PM

| ALC/Region: | Agency Short Name: | Account ID: | |
|---|---|---|---|
| 68128933 | RTP-Grants | 5H84092901 | |
| **Recipient ID:** | **Requestor ID:** | **Account Status:** | **As of Date:** |
| 4117261 | 4117261 | All | Dec 31, 2025 |

**Inquiry Results:**

| Recipient ID | Short Name | Account ID | Cumulative Authorizations | Cumulative Draws/RP/BE | Current Available Balance |
|---|---|---|---|---|---|
| 4117261 | ODOE | 5H84092901 | $6,418,895.45 | -$525,908.25 | $5,892,987.20 |
| | | Totals: | $6,418,895.45 | -$525,908.25 | $5,892,987.20 |

**1 of 1**

**SENSITIVE BUT UNCLASSIFIED**

about:blank                                                                                          1/1

EXHIBIT 1, Page 1 of 1
to Declaration of Janine Benner

SENSITIVE BUT UNCLASSIFIED



## Account Settlement Report

Date: 09/26/2025
Time: 10:56 AM

| | | |
|---|---|---|
| **ALC/Region:** 68128933 | **Agency Short Name:** RTP-Grants | **Account ID:** 5H84092901 |
| **Recipient ID:** 4117261 | **Recipient Short Name:** ODOE | **Transaction Date From:** 01/15/2025 |

**Through:** 09/26/2025

**Inquiry Results:**

| Applied Date | Transaction Type | Increases | Decreases | Account Balance |
|---|---|---|---|---|
| 01/15/2025 | Balance Forward | | | $0.00 |
| 01/15/2025 | Authorization | + $86,200,000.00 | | $86,200,000.00 |
| 02/24/2025 | Payment | | - $5,660.80 | $86,194,339.20 |
| 03/20/2025 | Payment | | - $7,892.10 | $86,186,447.10 |
| 04/23/2025 | Payment | | - $9,274.70 | $86,177,172.40 |
| 05/12/2025 | Payment | | - $1.00 | $86,177,171.40 |
| 05/22/2025 | Payment | | - $14,140.50 | $86,163,030.90 |
| 06/23/2025 | Payment | | - $35,264.32 | $86,127,766.58 |
| 07/23/2025 | Payment | | - $287,281.71 | $85,840,484.87 |
| 08/05/2025 | Payment | | - $54,350.94 | $85,786,133.93 |
| 08/11/2025 | Authorization | | - $79,781,104.55 | $6,005,029.38 |
| | Totals: | $86,200,000.00 | $80,194,970.62 | |

**1 of 1**

SENSITIVE BUT UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED



**Account Balance Inquiry**

Date: 04/29/2026
Time: 5:10 PM

| ALC/Region: | Agency Short Name: | Account ID: | |
| --- | --- | --- | --- |
| 68128933 | RTP-Grants | 5H84092901 | |
| **Recipient ID:** | **Requestor ID:** | **Account Status:** | **As of Date:** |
| 4117261 | 4117261 | All | Dec 31, 2025 |

**Inquiry Results:**

| Recipient ID | Short Name | Account ID | Cumulative Authorizations | Cumulative Draws/RP/BE | Current Available Balance |
| --- | --- | --- | --- | --- | --- |
| 4117261 | ODOE | 5H84092901 | $6,418,895.45 | -$525,908.25 | $5,892,987.20 |
| | | Totals: | $6,418,895.45 | -$525,908.25 | $5,892,987.20 |

**1 of 1**

SENSITIVE BUT UNCLASSIFIED