**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| MARYLAND CLEAN ENERGY CENTER, STATE OF ARIZONA, CALIFORNIA PUBLIC UTILITIES COMMISSION, STATE OF COLORADO, STATE OF CONNECTICUT, DISTRICT OF COLUMBIA, STATE OF HAWAI'I, ILLINOIS FINANCE AUTHORITY, OFFICE OF THE GOVERNOR *EX REL*. ANDY BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF KENTUCKY, STATE OF MAINE, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, NEVADA CLEAN ENERGY FUND, STATE OF NEW JERSEY, STATE OF NEW MEXICO, NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY, STATE OF NORTH CAROLINA, STATE OF OREGON, PENNSYLVANIA ENERGY DEVELOPMENT AUTHORITY, STATE OF RHODE ISLAND, STATE OF VERMONT, STATE OF WASHINGTON, WISCONSIN ECONOMIC DEVELOPMENT CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGINIA DEPARTMENT OF ENERGY, <br><br> Consolidated Plaintiff, <br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civ. No. 25-cv-01738 <br>(Consolidated with No. 26-268) <br><br> (Senior Judge Smith) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     Plaintiffs Are Entitled to Damages as a Matter of Law .................................................. 3

II.    Plaintiffs Have Established Expectancy Damages ........................................................ 10

     A.    Plaintiffs have established damages from the loss of grant funding for their Solar for All Programs. ...................................................................................11

     B.    Plaintiffs have established damages from the delayed implementation of their Solar for All programs. ...................................................................................... 16

III.    In the Alternative, Plaintiffs Have Established Reliance Damages .............................. 18

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

### Cases

*Allied Tech. Grp. v. United States*, 649 F.3d 1320 (Fed. Cir. 2011) ................................. 6

*AmBase Corp. v. United States*, 142 Fed. Cl. 105, 130 (2011) ....................................... 9

*Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356 (Fed. Cir. 2010) ................................5, 11

*Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 137 (W.D. Wash. Mar. 17, 2026) ........................ 10

*Astoria Fed. Sav. & Loan Ass'n v. United States*, 72 Fed. Cl. 712 (2006) ..................................... 2

*Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348 (Fed. Cir. 2001) .................3, 11, 20

*Boaz Hous. Auth. v. United States*, 994 F.3d 1359 (Fed. Cir. 2021) ................................. 16

*Bowen v. Massachusetts*, 487 U.S. 879, 930 (1988) ........................................................ 10

*Cal. Fed. Bank v. United States*, 245 F.3d 1342 (Fed. Cir. 2001) ........................................ 14, 17

*California Fed. Bank v. United States*, 395 F.3d 1263 (Fed. Cir. 2005) ..................................... 10

*Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330 (Fed. Cir. 2021) .................................... 16

*Cosmo Constr. Co. v. United States*, 451 F.2d 602 (Ct. Cl. 1971) .................................2, 3, 11, 14

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) ............................................. 7

*Dominion Res., Inc. v. United States*, 641 F.3d 1359 (Fed. Cir. 2011) ......................................... 17

*Dominion Res., Inc. v. United States*, 84 Fed. Cl. 259 (2008) ................................................ 17, 18

*Energy Capital Corporation v. United States*, 302 F.3d 1314 (Fed. Cir. 2002) ............................. 4

*Franconia Assocs. v. United States*, 536 U.S. 129 (2002) ............................................... 13

*G. L. Christian & Assocs. v. United States*, 312 F.2d 418, 427 (Ct. Cl. 1963) .............................. 8

*Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374 (Fed. Cir. 2001) ........................3, 11, 19

*Glendale Fed. Bank, FSB v. United States*, 378 F.3d 1308 (Fed. Cir. 2004) ............................... 20

*Glendale Fed. Bank, FSB v. United States*, 43 Fed. Cl. 390 (1999) ............................................ 3

*H.J. Lyness Constr., Inc. v. United States*, 121 Fed. Cl. 287 (2015) ........................................... 2

*H.J. Lyness Constr., Inc. v. United States*, 652 F. App'x 972 (Fed. Cir. 2016) ............................ 2

*Hahnenkamm, LLC v. United States*, 147 Fed. Cl. 383 (2020)......................................................... 2

*Hoskins v. State ex rel. Div. of Admin., Off. of Cmty. Dev't*, 273 So. 3d 323 (La. Ct. App. 2019).. 4

*Hous. Auth. of Santa Clara v. United States*, 125 Fed. Cl. 557 (2016)........................................ 18

*Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614 (2020)........................................... passim

*Ingham Reg'l Med. Ctr. v. United States*, — Fed. Cl. —, 2026 WL 1770558 (June 17, 2026)...... 2

*Keeter Trading Co. v. United States*, 79 Fed. Cl. 243 (2007) ....................................................... 13

*Landmark Land Co. v. FDIC*, 256 F.3d 1365 (Fed. Cir. 2001) ..................................................... 18

*Marquette Univ. v. Kuali, Inc.*, 584 F. Supp. 3d 720 (E.D. Wis. 2022)........................................... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...................................... 2

*Mktg. & Mgmt. Info., Inc. v. United States*, 57 Fed. Cl. 665, 675 (2003)........................................ 6

*Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997).............................. 10

*NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) ................................................................... 8

*Pacito v. Trump*, 169 F.4th 895, 927 (9th Cir. 2026) ..................................................................... 10

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354 (Fed. Cir. 2003) .............................. 2

*Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332 (Fed. Cir. 2022)...................... 2

*Rockingham County v. Luten Bridge Co.*, 35 F.2d 301, 307–08 (4th Cir. 1929) ............................ 8

*S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 57 Fed. Cl. 598, 640–41 (2003)........................ 9

*Sage Acquisitions v. Sec'y of Hous. & Urb. Dev't*, 119 F.4th 973 (Fed. Cir. 2024) ........................ 6

*San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425 (2019)........................................ 4, 16

*San Juan City Coll. v. United States*, 391 F.3d 1357, 1360–61 (Fed. Cir. 2004)............ 3, 6, 18, 19

*Sanders v. United States*, 252 F.3d 1329 (Fed. Cir. 2001) ............................................................. 3

*Stone Forest Indus., Inc. v. United States*, 973 F.2d 1548 (Fed. Cir. 1992)............................ 13, 19

*Stovall v. United States*, 94 Fed. Cl. 336 (2010) .......................................................................... 18

*Sys. Fuels Inc. v. United States*, 66 Fed. Cl. 722 (2005).............................................................. 2

*Takeda Pharms. U.S.A. v. Mylan Pharms.*, 967 F.3d 1339 (Fed. Cir. 2020)................................. 7

iii

*Tamerlane, Ltd. v. United States*, 81 Fed. Cl. 752 (2008) .......................................................... 14, 17

*TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 345 (2013) ..................................................... 6

*United Int'l Investigative Servs. v. United States*, 109 F.3d 734 (Fed. Cir. 1997) ......................... 6

*United States v. Winstar Corp.*, 518 U.S. 839 (1996) ................................................................. 3, 19

*Washington v. U.S. Dep't of Educ.*, 813 F. Supp. 3d 1222 (W.D. Wash. 2025)............................. 8

*Willems Indus., Inc. v. United States*, 295 F.2d 822 (Ct. Cl. 1961)............................................... 14

## Statutes and Regulations

2 C.F.R. § 200.420 ........................................................................................................................ 17

2 C.F.R. § 200.472 ........................................................................................................................ 17

2 C.F.R. §§ 200.339–343 .............................................................................................................. 17

31 U.S.C. § 6303............................................................................................................................. 7

31 U.S.C. § 6304(1) ....................................................................................................................... 7

31 U.S.C. 6301, et seq.................................................................................................................... 7

48 C.F.R. § 2.101 ........................................................................................................................... 7

Pub. L. 95-224, § 2, 92 Stat. 3, 3 (1978)....................................................................................... 7

## Miscellaneous Authorities

Farnsworth on Contracts § 12.08 (4th ed.) .................................................................................... 8

RCFC 56(g)..................................................................................................................................... 2

Recovery of Damages for Lost Profits § 4.3 (5th ed. 1998) .......................................................... 5

Restatement (Second) of Contracts § 344 (1981).........................................................................11

Restatement (Second) of Contracts § 344(b) ................................................................................ 19

Restatement (Second) of Contracts § 349..................................................................................... 18

**<u>INTRODUCTION</u>**

This action arose from the EPA's unlawful termination of Plaintiffs' Solar for All Grant Agreements. In response to Plaintiffs' motion for summary judgment on liability, the EPA focuses entirely on damages. That decision speaks volumes. Not once does the EPA argue that it had any lawful basis to terminate the Solar for All Grant Agreements. Thus, it can be established as a matter of law that the EPA breached the Solar for All Grant Agreements.

That leaves only damages. And at this stage of litigation, all Plaintiffs need to show is that they are entitled to some amount of damages to establish liability. Plaintiffs have met their burden. Plaintiffs have shown that the EPA's unlawful termination of their Solar for All Grant Agreements resulted in upwards of $2.6 billion in lost funding. As a result of these terminations, Plaintiffs have been forced to put their Solar for All programs on hold, leaving Plaintiffs unable to realize the public benefits of their programs—including increased solar technology deployment, reduced emissions, and lower energy costs for low-income households, among other public benefits. Plaintiffs have, alternatively, demonstrated that the EPA's breach caused them to suffer damages in reliance on EPA's promises. Under either theory of recovery, Plaintiffs were harmed.

While the EPA previously represented in parallel district court proceedings that "[t]he loss of grant funding is monetary injury capable of being remedied by a damages award in the Court of Federal Claims," the EPA has now switched gears, arguing that Plaintiffs cannot establish liability as a matter of law because Plaintiffs are unable to recover any damages other than costs already incurred. The EPA's narrow construction of damages ignores basic principles of contract remedies about making the non-breaching party whole and represents a radical reinterpretation that would render federal grants illusory contracts. This Court should reject the EPA's narrow construction and hold the government accountable for its breach.

## **ARGUMENT**

Plaintiffs are entitled to summary judgment because "there is no genuine dispute as to any material fact." *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1339 (Fed. Cir. 2022) (citation omitted); *see also Hahnenkamm, LLC v. United States*, 147 Fed. Cl. 383, 388 (2020) (no genuine issue for trial "[i]f the record taken as a whole 'could not lead a rational trier of fact to find for the non-moving party'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Further, even "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." *H.J. Lyness Constr., Inc. v. United States*, 121 Fed. Cl. 287, 289 (2015), *aff'd*, 652 F. App'x 972 (Fed. Cir. 2016) (quoting RCFC 56(g)).

Here, Plaintiffs have demonstrated breach, which the EPA does not dispute.  Therefore, there is no genuine dispute of material fact that the EPA breached the Solar for All Grant Agreements.  *See Ingham Reg'l Med. Ctr. v. United States*, — Fed. Cl. —, 2026 WL 1770558, at *8 (June 17, 2026) ("A non-movant's argument is 'waived when it was not raised in response to the motion for summary judgment.'") (quoting *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003)).  As to damages, there is no genuine dispute of material fact that Plaintiffs have established "*some* evidence of damage to support a finding on liability." *Cosmo Constr. Co. v. United States*, 451 F.2d 602, 605 (Ct. Cl. 1971) (emphasis in original); *see also Sys. Fuels Inc. v. United States*, 66 Fed. Cl. 722, 732 (2005) (requiring "at least a non-de minimus amount of damages to establish liability for a breach of contract").

Plaintiffs have presented evidence of damages based on expectancy and reliance interests, and Plaintiffs are entitled "to recover the highest amount [they] can prove under any measure of damages." *Astoria Fed. Sav. & Loan Ass'n v. United States*, 72 Fed. Cl. 712, 718 (2006); *see also*

2

*Glendale Fed. Bank, FSB v. United States*, 43 Fed. Cl. 390, 392 (1999) (Smith, J.) ("At trial, the court permitted plaintiff to put on evidence of damages based on the three traditional theories of contract recovery: expectation, reliance and restitution."), *aff'd in relevant part*, 239 F.3d 1374 (Fed. Cir. 2001).  At this stage, Plaintiffs need not prove "the quantity, quality, or precision necessary to support a judgment in a precise sum." *Cosmo Const. Co.*, 196 Ct. Cl. at 605–06. Rather, Plaintiffs need only "demonstrate that the issue of liability is not purely academic; that some damage has been incurred." *Id.*; *see also Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) ("The ascertainment of damages is not an exact science, and where responsibility for damage is clear, it is not essential that the amount thereof be ascertainable with absolute exactness or mathematical precision.").  Plaintiffs have met that burden.

## I.    Plaintiffs Are Entitled to Damages as a Matter of Law

It is axiomatic that "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996).  "The fact that this contract covers government financial grants does not warrant a different standard.  If the government has breached the Agreement, the [plaintiff] is entitled to seek whatever damages it is entitled to receive." *San Juan City Coll. v. United States*, 391 F.3d 1357, 1360–61 (Fed. Cir. 2004); *see also Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001) ("[I]n the area of government contracts, as with private agreements, there is a presumption in the civil context that a damages remedy will be available upon the breach of an agreement.").

Despite the presumption that Plaintiffs are entitled to damages caused by the EPA's breach, the EPA argues repeatedly that Plaintiffs are not entitled to recover any damages as a matter of law because the Solar for All Grant Agreements contain only a limited promise to reimburse Plaintiffs for costs already incurred, nothing more.  The EPA is mistaken.  Its view would render federal grants illusory contracts by eliminating damages for breach as a matter of law.  This radical position

3

has no support in case law; conflicts with Federal Circuit precedent rejecting per se bars to recovery; effectively rewrites the Solar for All Grant Agreements to give the EPA unbridled discretion to terminate; and amounts to nothing more than a repackaged argument on jurisdiction.

First, the EPA cites no case law to support its narrow interpretation on recovery for breach of contract.  Nor could it.  While case law on recovery for unlawful grant terminations is sparse—unsurprisingly, given that such terminations have historically been so rare—courts reviewing challenges to grant terminations have allowed plaintiffs to pursue traditional theories of damages beyond mere reimbursement of out-of-pocket expenses.  *See San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 440 (2019) (upholding jurisdiction over claim for wrongly diminished subsidy where plaintiff sought to recover the difference between "the amount of the Section 9 operating subsidy plaintiff alleges it should have received in 2012, and . . . the amount of the Section 9 operating subsidy plaintiff received in 2012"); *see also Hoskins v. State ex rel. Div. of Admin., Off. of Cmty. Dev't*, 273 So. 3d 323, 328, 331 (La. Ct. App. 2019) (affirming damages award to plaintiff for breach of contract in the full amount of a grant from FEMA under a cost-reimbursement program); *Marquette Univ. v. Kuali, Inc.*, 584 F. Supp. 3d 720, 723 (E.D. Wis. 2022) (holding plaintiff had "presented evidence that could lead a reasonable finder of fact to conclude that it suffered some damages" even though the contract was a cost-reimbursement grant and the plaintiff had yet to "incur the costs of the program that the grant was intended to offset").

Moreover, the EPA's view conflicts with Federal Circuit precedent that rejects per se bars to particular forms of recovery at summary judgment.  For instance, in *Energy Capital Corporation v. United States*, the Federal Circuit rejected the government's urging "to adopt a per se rule that lost profits may never be recovered for a new business venture that was not performed."  302 F.3d 1314, 1324 (Fed. Cir. 2002).  The government argued "that because Energy Capital was engaged

4

in a new business that had never been performed, the Court of Federal Claims' award of lost profits was speculative and erroneous as a matter of law." *Id.* at 1325. The Federal Circuit explained that "the weight of modern authority" rejects a per se rule that lost profits for a new business are not recoverable, instead recognizing that "[w]hat was once a rule of law has been converted into a rule of evidence." *Id.* at 1327 (quoting Robert L. Dunn, *Recovery of Damages for Lost Profits* § 4.3 (5th ed. 1998)). Here, too, whether or not Plaintiffs' damages may be "difficult to recover . . . , such damages are not barred as a matter of law." *Id.* at 1326–27; *see also Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356, 1372 (Fed. Cir. 2010) (holding "that the trial court did not err in measuring and awarding expectancy damages" and observing that the court has "not . . . barred as a matter of law the use of expectancy/lost profits theory") (citation omitted).

A per se bar to recovery beyond reimbursement also conflicts with the remedies provision of the Solar for All Grant Agreements. Under those provisions, if a recipient is terminated or suspended due to noncompliance, then the Grant Agreements provide that "costs . . . are allowable" that (a) "result from financial obligations which were properly incurred by the non-Federal entity before the effective date of suspension or termination," and (b) "would be allowable if the Federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect." *E.g.*, Ex. E1, ECF 1-7, at 35. By restricting Plaintiffs' recovery to those exact same costs, the EPA's theory of damages would limit Plaintiffs—who indisputably complied with the terms and conditions of these agreements—to the same amount as a party who violated the terms and conditions. That would render meaningless the contract's carefully crafted restrictions on when the EPA may terminate for noncompliance. The EPA's theory of damages "fails to give meaning to the [remedies] provisions" and therefore amounts to "an improper reading of the [Grant Agreements]." *See Allied Tech. Grp. v. United States*, 649 F.3d 1320, 1328 (Fed. Cir.

5

2011); *see also Sage Acquisitions v. Sec'y of Hous. & Urb. Dev't*, 119 F.4th 973, 979 (Fed. Cir. 2024) (A court "must interpret [a contract] as a whole and 'in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.'") (quoting *United Int'l Investigative Servs. v. United States*, 109 F.3d 734, 737 (Fed. Cir. 1997)).[1]

Indeed, limiting Plaintiffs' recovery to reimbursements for costs incurred would effectively rewrite the Solar for All Agreements as containing a termination-for-convenience clause of the kind contemplated by the Federal Acquisition Regulation (FAR) for procurement contracts. In other words, the EPA seems to think that it can terminate the Grant Agreements at its sole discretion and limit the monetary recovery for Plaintiffs, as is the case for procurement contracts. *See TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 345 (2013) (noting the FAR "limits the monetary recovery a contract awardee can collect" when a procurement contract is terminated for convenience to only "partial performance up to the time of the termination for convenience and certain other costs"). But unlike the FAR, the Uniform Administrative Requirements ("UAR"), 2 C.F.R. 200 et seq., which govern grant agreements, do not contain termination-for-convenience clauses. Moreover, "[t]here was not a termination for convenience clause" in the Solar for All Grant Agreements, so the Solar for All Grant Agreements "cannot be construed as including the termination for convenience clause" as that "was plainly not the parties' intent." *See Mktg. & Mgmt. Info., Inc. v. United States*, 57 Fed. Cl. 665, 675 (2003). Allowing the EPA to nonetheless terminate the Grant Agreements at its discretion and limit Plaintiffs' recovery as if no breach occurred would render illusory the termination provision in the Solar for All Grant Agreements,

---

[1] For similar reasons, the fact that the Solar for All Grant Agreements provided a limited remedy for noncompliance *by the recipient* does not limit the availability of remedies for breach *by the government*. With respect to the latter, "nothing in either the Agreement itself or in the governing statute or regulations [ ] supports the . . . view that the parties understood that damages would not be available in the event of breach." *See San Juan City Coll.*, 391 F.3d at 1360–61.

*see Takeda Pharms. U.S.A. v. Mylan Pharms.*, 967 F.3d 1339, 1346 (Fed. Cir. 2020) ("We will not read a contract to render a provision or term 'meaningless or illusory.'" (citation omitted)), and violate the principle that state recipients of federal funding "cannot 'knowingly accept' [a] deal with the Federal Government unless they 'would clearly understand . . . the obligations' that would come along with doing so," *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219 (2022) (quoting *Arlington Cent. School Dist. Bd. Of Ed. v. Murphy*, 548 U.S. 291, 296 (2006)).

The EPA nonetheless argues that the cost-share structure of the grant agreements reflect only a limited promise to reimburse, similar to cost-reimbursement procurement contracts under the FAR. *See* Resp. at 9. But that analogy is inapt. For starters, the Solar for All Grant Agreements are not procurement contracts, so the FAR is inapplicable. *See* 48 C.F.R. § 2.101 (FAR's definition of "contracts" does not include "grants and cooperative agreements covered by 31 U.S.C. 6301, et seq."). More fundamentally, the principles of reimbursement for procurement contracts do not apply to grant agreements because these are distinct legal instruments with distinct purposes. When Congress passed the Federal Grant and Cooperative Agreement Act of 1977, it sought "to distinguish Federal assistance relationships from Federal procurement relationships." Pub. L. 95-224, § 2, 92 Stat. 3, 3 (1978). Thus, while a federal procurement contract is defined as a legal instrument that has the purpose of "acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government," 31 U.S.C. §§ 6303; 6304(1), a "grant agreement" is defined as a legal instrument where "the principal purpose of the relationship is to transfer a thing of value to the State" in order "to carry out a public purpose," *id.* § 6304(1).

The difference in the "purpose" of these agreements underscores the fatal reasoning of the EPA's logic. *See id.* When a contractor enters into a procurement contract with the government, the contractor "is interested only in the profit he will make out of the contract." *Rockingham*

*County v. Luten Bridge Co.*, 35 F.2d 301, 307–08 (4th Cir. 1929).  Thus, in the EPA's example of

"the builder who stubbornly continues work after the owner has repudiated the contract," *see* Resp.

at 16 (quoting *Farnsworth on Contracts* § 12.08 (4th ed.)), the builder has no interest in the subject

matter of the contract apart from its fee, and a duty to mitigate arises.  If the government cancels

the contract because it no longer needs the goods or services to be procured, then "to insist on

proceeding with the contract" would "inflict[] damage on the [government] without benefit to the

plaintiff." *Rockingham County*, 35 F.2d at 307.  The Solar for All Grant Agreements are not like

that.  Plaintiffs entered into them to "carry out a public purpose." *See* 31 U.S.C. § 6304(1).  Thus,

Plaintiffs have a legally cognizable interest beyond reimbursement; the interest is in realizing the

public purpose of their Solar for All programs.  The EPA's cancellation of the agreements—

preventing Plaintiffs from carrying out their purpose—has thus harmed Plaintiffs beyond the

expenditures that they already incurred.[2]

For instance, Plaintiff Maryland Clean Energy Center ("MCEC") designed its Solar for All

program to yield $7.2 million in savings for low-income households over five years; generate

nearly 50,000 Megawatt-hours in clean energy annually; and avoid more than 100,000 tons of

carbon dioxide emissions annually; as well as supporting jobs, training, and other public benefits.

---

[2] Also, unlike in the procurement context where termination-for-convenience clauses are common, states do not enter grant agreements with the expectation that the federal government might terminate for convenience. *Contra G. L. Christian & Assocs. v. United States*, 312 F.2d 418, 427 (Ct. Cl. 1963) (finding an "experienced contractor" for procurement would not be "wholly unaware that there might be a termination for the convenience of the Government").  Not only do grant agreements generally lack termination-for-convenience clauses, but also prior to the past year, the federal government rarely terminated grant agreements in the middle of their term.  *See, e.g.*, *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2667 (2025) (Jackson, J., concurring in part and dissenting in part) (noting "the NIH terminated fewer than six grants midstream in the 13 years from 2012 to January 20, 2025."); *Washington v. U.S. Dep't of Educ.*, 813 F. Supp. 3d 1222, 1243 n.9 (W.D. Wash. 2025) (noting "undisputed statements from Grantees indicate that grant discontinuances or terminations were extremely rare before 2025").

Ex. D1, ECF 1-6, at 6–9.  The EPA awarded MCEC approximately $62.5 million to achieve those goals, which MCEC agreed to use "in accordance with its EPA-approved Solar for All Workplan." Ex. E1, ECF 1-7, at 2.  Now that the EPA has breached the grant agreement, MCEC will either have to pay an additional $60 million out of its own budget or discontinue the Solar for All program and lose out on the expected benefits.  Under either scenario, MCEC has suffered damages far beyond the amount it already has expended on the program.  And MCEC is not required to "mitigate" its damages by spending its own money or shutting down its Solar for All program and acquiescing in the harm caused by EPA's breach.  *See S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 57 Fed. Cl. 598, 640–41 (2003) ("[T]he rules of mitigation do not require the non-breaching party to subject itself to the risk of additional losses."), *aff'd in relevant part*, 422 F.3d 1319 (Fed. Cir. 2005); *see also AmBase Corp. v. United States*, 142 Fed. Cl. 105, 130 (2011), *as clarified* (Oct. 31, 2011) (Smith, J.) ("The Government's argument is like that of a bad driver who destroys your car and then says because you have replaced it with your own money you have no damages.").

As a final point, the EPA's argument that the loss of grant funding is not capable of being remedied by this Court amounts to "a jurisdictional sleight-of-hand."  *Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 628 (2020).  Although the EPA concedes that the Solar for All Grant Agreements are contracts that may support claims for money damages pursuant to the Tucker Act, the government nevertheless argues that the Solar for All Grant Agreements "could not have given rise to any expectation interest beyond reimbursement for costs actually incurred and approved pursuant to the cost regulations."  Resp. at 10.  Yet in parallel litigation in federal district court, the government argued that jurisdiction was lacking under the Administrative Procedure Act because "[*t*]*he loss of grant funding* is monetary injury capable of being remedied by a damages award in the Court of Federal Claims."  Defs.' Cross Mot. Summ. J. & Opp'n to Pls.' Mot. Summ.

9

J. at 34, *Arizona v. U.S. EPA*, No. 2:25-cv-02015, ECF 137 (W.D. Wash. Mar. 17, 2026) (emphasis added); *id.* at 25 ("Plaintiffs may seek damages against EPA through a breach-of-contract suit in the Court of Federal Claims.").

"The Government cannot have its cake and eat it too," *Pacito v. Trump*, 169 F.4th 895, 927 (9th Cir. 2026)—urging the district court that it should dismiss Plaintiffs' claims because this Court can award damages for the loss of grant funding, then telling this Court that it cannot do so. The government's shifting views of Tucker Act remedies present the sort of "whipsaw litigation strategy" that is "unfair to the plaintiff," *Mata v. United States*, 107 Fed. Cl. 618, 624 (2012), and "threaten[] to turn this case into a jurisprudential Flying Dutchman, casting about in search of a court that can reach the merits," *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997); *see also Bowen v. Massachusetts*, 487 U.S. 879, 930 (1988) (Scalia, J., dissenting) ("Nothing is more wasteful than litigation about where to litigate . . . ."). Indeed, as the government notes, the district court already dismissed the case before it for lack of jurisdiction. Resp. at 19. This Court should therefore reject the EPA's circuitous attempt to "shut the courthouse door" on Plaintiffs. *See Hous. Auth. of Slidell*, 149 Fed. at 629 (rejecting jurisdictional argument that made plaintiffs subject to "jurisdictional ping pong").

In short, Plaintiffs are entitled to seek all traditional contract remedies, and this Court should reject the EPA's attempt to impose a per se bar to recovery at summary judgment on liability.

## II.    Plaintiffs Have Established Expectancy Damages

Plaintiffs are entitled to expectancy damages resulting from the EPA's unlawful termination of their Solar for All Grant Agreements. "'[E]xpectancy damages,' i.e., the benefits the nonbreaching party expected to receive in the absence of a breach," are, like other contract remedies, "designed to make the nonbreaching party whole." *Cal. Fed. Bank v. United States*, 395 F.3d 1263, 1267 (Fed. Cir. 2005) (quoting *Glendale Fed. Bank, FSB v. United States*, 239 F.3d

10

1374, 1379 (Fed. Cir. 2001)); *see also* Restatement (Second) of Contracts § 344 (1981) (describing a party's "expectation interest" as the "interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed"). Expectancy damages "are often equated with lost profits, although they can include other damage elements as well." *Glendale Fed. Bank*, 239 F.3d at 1380. "In order to recover expectancy damages, a party must prove that the damages are 'actually foreseen or reasonably foreseeable, are caused by the breach of the promisor, and are proved with reasonable certainty.'" *AmBase Corp.*, 142 Fed. Cl. at 113 (quoting *Bluebonnet Sav. Bank*, 266 F.3d at 1355). "Each of those inquiries presents a question of fact[.]" *Anchor Sav. Bank*, 597 F.3d at 1361.

Here, Plaintiffs seek expectancy damages to be made whole. For Plaintiffs to realize the benefit of the bargain, they are entitled to recover the loss of grant funding that would have enabled them to realize the public purpose of their Solar for All programs, as well as damages resulting from delayed implementation of their Solar for All Programs. This relief would put Plaintiffs in as good a position as they would have been in the absence of breach.

### A. Plaintiffs have established damages from the loss of grant funding for their Solar for All Programs.

The EPA concedes that Plaintiffs "need not prove a specific quantum at this stage" but argues that summary judgment on liability should be denied because Plaintiffs cannot "prove entitlement to legally recoverable loss." Resp. at 15. The EPA is wrong. At this stage, Plaintiffs have demonstrated expectancy damages that are "actually foreseen or reasonably foreseeable, are caused by the breach of the promisor, and are proved with reasonable certainty." *AmBase Corp.*, 142 Fed. Cl. at 113 (quoting *Bluebonnet Sav. Bank*, 266 F.3d at 1355). Thus, Plaintiffs have sufficiently established "*some* evidence of damage . . . to demonstrate that the issue of liability is not purely academic." *Cosmo Constr. Co.*, 451 F.2d at 605.

11

For instance, the EPA promised to MCEC a grant award of $62,450,000, and the EPA "agree[d] to cost-share 100% of all approved budget period costs incurred, up to and not exceeding total federal funding of $62,450,000." Ex. E1, ECF 1-7, at 2.  Subsequently, MCEC had access to $62,050,000 in its Automated Standard Application for Payments ("ASAP") account.  Ex. F1, ECF 1-8, at 2.[3]  MCEC then withdrew $988,898.65 for allowable costs to implement its Solar for All program.  *Id.*  Then, on August 11, 2025, the EPA unlawfully withdrew $56,932,244.77, leaving a balance of $4,128,856.58.  *Id.*  MCEC has therefore demonstrated, at a minimum, *some* evidence of harm in losing the amount promised to enable MCEC to realize the public purpose of the Solar for All Program.  For MCEC, that value is a loss of upwards of $61,451,101.35.[4]

Calculating these damages for each Plaintiff at the damages stage will be straightforward. The value of each Plaintiff's Solar for All program was foreseeable by the EPA because the award amount was explicitly laid out in each Grant Agreement; the loss of funding to implement each Solar for All program was caused by the EPA unlawfully terminating the Solar for All Grant Agreements and withdrawing funds from Plaintiffs' ASAP Accounts; and the damages are provable with reasonable certainty because each Plaintiff's work plan spelled out in meticulous detail the budgetary costs and public benefits in implementing the Solar for All program.

The EPA nonetheless argues that Plaintiffs cannot recover expectancy damages from the loss of grant funding  The EPA's arguments fall flat.

To start, the EPA's argument that Plaintiffs are not entitled to damages due to the loss of grant funding because those costs were not yet "approved" or "incurred," Resp. at 14–15, borders

---

[3] The total amount in MCEC's ASAP account is $400,000 less than the grant award, which was intended to be used for mandatory technical assistance.

[4] The EPA left approximately 7 percent of funds available in each Plaintiffs' ASAP accounts.  Resp. at 6.  To the extent those funds are available to Plaintiffs and will not be unlawfully withheld by other means, that amount can also be subtracted from the final damages award.

on the absurd. The EPA's argument assumes that Plaintiffs should have continued performing under the Solar for All Grant Agreements and requesting funds after termination. But the EPA ignores the undisputed fact that the EPA breached the Solar for All Grant Agreements by unlawfully terminating them, ordering Plaintiffs to stop working on their programs, and repudiating its obligations to reimburse future costs as they were incurred. *See Franconia Assocs. v. United States*, 536 U.S. 129, 144 (2002) ("[R]epudiation give[s] the promisee the right of electing either to . . . wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract") (internal quotation marks and citation omitted). And "[t]he law is clear that, when a party to a contract is faced with a breach by the opposing party, that party can choose either to terminate the contract or to continue the contract." *Keeter Trading Co. v. United States*, 79 Fed. Cl. 243, 253 (2007) (citation omitted); *see also Stone Forest Indus., Inc. v. United States*, 973 F.2d 1548, 1550 (Fed. Cir. 1992) ("Upon material breach of a contract the non-breaching party has the right to discontinue performance of the contract, and to seek redress in accordance with law."). That Plaintiffs elected to discontinue performance does not mean they are not entitled to the full scope of their damages.

Moreover, the reimbursement structure of the grants, which requires that costs be "approved" and "incurred," does nothing to undermine the availability of damages. Indeed, this Court rejected a similar line of reasoning in *Housing Authority of Slidell v. United States*, 149 Fed. Cl. 614 (2020). There, the government argued that the plaintiffs were suing over "strings-attached grants" that the government said "are outside the Tucker Act orbit." *Id.* at 627. In particular, the government asserted that the plaintiff's receipt of funding "is highly contingent, restricted, and subject to HUD's ongoing supervision and right to claw back the funds[.]" *Id.* As the Court rightly

13

observed, "[t]hat assertion—even if true—is just another way of saying that the government has contractual rights or regulatory powers" or that the recipient "has contractual obligations, too." *Id.* at 627. Notably, "[t]he typical provider of goods or services to the federal government is subject to literally volumes of compliance requirements, but the government has never contended that their mere existence precludes a breach of contract claim." *Id.* n.25. It follows that "the mere existence of a contractor's compliance obligations cannot be deployed to defeat a breach of contract claim." *Id.* Here, as in *Slidell*, notwithstanding the conditions imposed on Plaintiffs, because the EPA has "no basis to withhold the funds at issue," then it must "pay the consequences" for its breach. *Id.* at 632.

Next, the EPA argues that it is "[m]ere speculation" for Plaintiffs to assume that they would have received the value of their grants irrespective of the regulations. Resp. at 15 (quoting *Willems Indus., Inc. v. United States*, 295 F.2d 822, 831 (Ct. Cl. 1961)). This argument is premature because "[w]hether or not damages sought by a party are speculative is an issue properly reserved for the damages stage of these proceedings." *Tamerlane, Ltd. v. United States*, 81 Fed. Cl. 752, 766 (2008) (granting plaintiffs' partial summary judgment on liability and scheduling discovery on damages); *see Cal. Fed. Bank v. United States*, 245 F.3d 1342, 1350 (Fed. Cir. 2001) ("The Court of Federal Claims erred by not permitting Cal Fed to present its evidence [of damages] at a trial based on its legal conclusion that the proof would be too speculative."). And while the EPA insists that even absent a breach, some of Plaintiffs' costs may not have been approved—meaning that Plaintiffs may not have been reimbursed for the full value of their awards—at this stage, Plaintiffs need only prove "*some* evidence of damage." *Cosmo Constr. Co.*, 451 F.2d at 605.

Plaintiffs' Solar for All Workplans, which were incorporated into the Grant Agreements, described how Plaintiffs intended (with the EPA's approval) to spend their Solar for All awards.

MCEC, for example, detailed in its Budget Narrative how it intended to spend $2,762,843 for personnel, $773,596 for fringe benefits, $15,000 for travel, $46,000 for supplies, $2,801,534 for technical, accounting, and IT contracts, and $55,301,027 for other costs (mostly financial assistance subawards). Ex. D1, ECF 1-6, at 30–35. And in the first months of its Solar for All operations, MCEC was reimbursed $988,898.65 for allowable costs incurred in accordance with its workplan. Ex. F1, ECF 1-8, at 2. It is not mere speculation for the Court to conclude that—absent the EPA's breach—MCEC would have received *some* (if not all) of the money remaining on its grant.

Despite pointing to the Plaintiffs' compliance obligations and the EPA's oversight powers, the EPA has offered no evidence that MCEC (or any other Plaintiff) had ever failed to meet its compliance obligations. Nor can the EPA possibly demonstrate that MCEC (and every other Plaintiff) would have failed to meet *every* compliance obligation going forward. Thus, there is no genuine dispute of material fact that, but for EPA's breach, Plaintiffs would have been reimbursed for *some* (if not all) of the remaining funding. *See Hous. Auth. of Slidell*, 149 Fed. Cl. at 628 n.25 ("If the government wants to demonstrate that HACS has failed to meet its compliance obligations in a manner that permitted HUD to withhold the funds in question, the government remains free to do so, but it has not done so on the record thus far . . . .").

The EPA also argues that Plaintiffs' request for the full amount of the grant award as damages amounts to a request for "specific performance." Resp. at 18. Not so. This Court previously has rejected similar attempts by the government to recharacterize plaintiffs' claims for compensatory damages as specific performance. As the Court explained in *Housing Authority of Slidell*, "[p]utting aside the obvious point that a complaint for money due and owing under a contract could always be recharacterized as a claim for specific performance," the plaintiff was

"not suing for the return of a thing, the issuance of an order awarding a grant agreement, or anything similar that would involve an injunction," but instead sought "contract damages (in the form of a money judgment) for the government's failure to pay what is allegedly due" under the agreement—"a classic breach of contract claim."  149 Fed. Cl. at 628–29; *see also San Antonio Hous. Auth.*, 143 Fed. Cl. at 450 ("Nowhere in the complaint does plaintiff request specific performance . . . . Therefore, contrary to defendant's position, plaintiff's breach of contract claim is seeking compensatory monetary damages . . . in order to place plaintiff in the position it should have been had the breach not occurred.").  Further, assuming Plaintiffs are "successful on the merits of [their] breach of contract claim and judgment is entered in [their] favor," the "damages award would be paid from the Judgment Fund," rather than from the Solar for All appropriations. *See San Antonio Hous. Auth.*, 143 Fed. Cl. at 451.  Therefore, the true nature of Plaintiffs' claim is one for money damages and not specific relief.  *See Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1355 (Fed. Cir. 2021) ("In this case, Columbus has sought only a money judgment, and its request for relief does not in any way invoke equitable remedies."); *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021) ("We conclude that the true nature of the PHAs' claim is one for compensatory money damages and not equitable relief.").

Accordingly, Plaintiffs have established damages from the loss of their grant funding that would have enabled them to realize the public purpose of their Solar for All programs.

### B.  Plaintiffs have established damages from the delayed implementation of their Solar for All programs.

Plaintiffs are also entitled to expectancy damages to compensate them for increased costs caused by the EPA's breach.  When the EPA awarded Plaintiffs their Solar for All grants, the amounts awarded were based on detailed budgets of expected costs.  Due to the EPA's unlawful termination, Plaintiffs are delayed in implementing their Solar for All programs, which will result

16

in higher costs than expected.  For instance, MCEC allocated a budget of $2,762,843 for personnel, to be spent over five years.  Those numbers included a 3 percent cost of living adjustment ("COLA") from year 1 to year 5.  Ex. D1, ECF 1-6, at 31–32.  But EPA's breach—which has already caused a one-year delay—will cause MCEC's Solar for All program to extend past year 5.  Therefore, factoring in the 3 percent COLA, as well as the costs to rehire staff that Plaintiffs were forced to lay off, *e.g.*, Magruder Decl., ECF 72-1, ¶ 22 (Md.) (detailing employment termination and reassignment), the total personnel costs will be greater than estimated.  Even assuming MCEC were reimbursed its full expectancy award in the amount of $61,451,101.35, MCEC will have to allocate more resources to personnel (and other costs), reducing the amount spent on other budgeted items.  These increased overhead costs should be included in the damages award.  *See Dominion Res., Inc. v. United States*, 84 Fed. Cl. 259, 281 (2008), *aff'd*, 641 F.3d 1359 (Fed. Cir. 2011) (allowing overhead costs because "[a]bsent [the government]'s partial breach, plaintiffs could have allocated their resources to other projects.")

To be sure, Plaintiffs acknowledge that the exact measure of these damages involves questions of fact best reserved for the damages phase of discovery.  Thus, the EPA's arguments (Resp. at 13–14) about the speculative nature of these damages are, as mentioned above, premature.  *See Cal. Fed. Bank*, 245 F.3d at 1350; *Tamerlane*, 81 Fed. Cl. at 766.  But the EPA is wrong to suggest that Plaintiffs cannot pursue these damages as a matter of law.

First, the EPA suggests that Plaintiffs' damages are defined by the UAR rather than traditional contract remedies.  But nothing in the UAR purports to displace ordinary contract-law principles or foreclose damages that would otherwise be available for the government's breach The UAR establishes remedies for noncompliance *by the recipient*, including termination, 2 C.F.R. §§ 200.339–343, as well as principles governing allowable costs to the recipient, *id.* §§ 200.420,

17

200.472.  The UAR says nothing about damages for breach of contract *by the federal government*, nor does the EPA point to any regulation governing this scenario.  Accordingly, "nothing in the . . . regulations [] supports the . . . view that the parties understood that damages would not be available in the event of breach."  *San Juan City Coll.*, 391 F.3d at 1360–61; *see also supra* note 1.

The EPA also argues that awarding these damages would place Plaintiffs in a better position than if the grant agreements had not been terminated.  As discussed above, however, depriving Plaintiffs of the costs of increased overhead would effectively diminish the value of the award, placing Plaintiffs in a worse position than if the EPA had not breached the Solar for All Grant Agreements.  Further, providing these damages to Plaintiffs is not a windfall because the damages sought will enable Plaintiffs to fulfill the public purpose of increasing solar capacity, reducing emissions, and lowering energy costs for low-income families.  *See Hous. Auth. of Santa Clara v. United States*, 125 Fed. Cl. 557, 569–70 (2016) (finding contractual relief "not a windfall to Plaintiffs, because the damages sought for HUD's breach of the [Moving to Work] Agreements will be used to provide low-income housing to the residents of Santa Clara and San Jose").

Lastly, while these increased costs have not yet been incurred, that is not fatal to Plaintiffs' relief.  Damages are available if Plaintiffs can "demonstrate foreseeability, causation, and certainty," *Dominion Res.*, 84 Fed. Cl. at 270, and Plaintiffs have shown that they will be able to meet that standard during the appropriate stage of this litigation.

## III.    In the Alternative, Plaintiffs Have Established Reliance Damages

Even apart from expectancy damages, Plaintiffs are entitled to summary judgment on liability because they are entitled to reliance damages caused by EPA's breach.  *See Stovall v. United States*, 94 Fed. Cl. 336, 354 (2010) (noting that "a party has a right to damages based on his reliance interest 'as an alternative to' expectation damages" (quoting Restatement (Second) of Contracts § 349)). "The purpose of reliance damages is to compensate the plaintiff 'for loss caused

by reliance on the contract.'" *Landmark Land Co. v. FDIC*, 256 F.3d 1365, 1378 (Fed. Cir. 2001) (quoting Restatement (Second) of Contracts § 344(b)). "As a general proposition, these damages are available for injuries resulting from activities that occurred either before or after the breach." *Glendale Fed. Bank*, 239 F.3d at 1383.

When the EPA terminated Plaintiffs' Solar for All Grant Agreements, Plaintiffs were forced to abruptly halt their Solar for All programs. In reliance on the EPA's promise to fund their Solar for All Programs, Plaintiffs had invested in staff, technology, subcontracts, training, and other investments. *E.g.*, Magruder Decl. ¶ 22 (Md.). Yet because of the unlawful terminations, Plaintiffs have been forced to lay off staff, pause subrecipient activity, halt contracts and negotiations, and pause implementation. *E.g.*, *id.* Plaintiffs have further demonstrated some evidence of damages for outstanding expenses. *E.g.*, *id.* ¶ 23 (noting $56,168.18 in outstanding expenses and an additional $20,076.40 outstanding from subrecipients). These harms are remediable to put Plaintiffs "in as good a position as [they] would have been in had the contract not been made." *Glendale Fed. Bank*, 239 F.3d at 1383 (quoting Restatement (Second) of Contracts § 344(b)).

The EPA argues that Plaintiffs cannot assert these harms because the EPA has not refused to pay them, suggesting Plaintiffs' theory of damages is "in search of a breach." Resp. at 10. Curiously, the EPA overlooks a key fact: the EPA indisputably breached the Solar for All Grant Agreements. As discussed above, upon breach, Plaintiffs had the "right to discontinue performance of the contract, and to seek redress in accordance with law." *Stone Forest Indus., Inc.*, 973 F.2d at 1550. And "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996). "The fact that this contract covers government financial grants does not warrant a different standard. If the government has breached

19

the Agreement, the [plaintiff] is entitled to seek whatever damages it is entitled to receive." *San Juan City Coll.*, 391 F.3d at 1361.

Further, EPA's promise to "reimburse termination and post-termination costs," Resp. at 11, is beside the point.  It is not for the EPA to decide what relief Plaintiffs are entitled to.  The EPA suggests that, notwithstanding the EPA's breach, Plaintiffs were required to comply with the unlawful terminations and submit closeout reports to the EPA, leaving the EPA to determine whether any of Plaintiffs' costs were allowable.  The EPA cites no authority (nor could it) that the breaching party gets to determine the relief awarded to the nonbreaching party.  To the contrary, it is the province of this Court to determine the amount of damages based on the evidence presented. *See Bluebonnet Sav. Bank*, 266 F.3d at 1355 (noting it is sufficient for a plaintiff to put forward enough evidence "to enable a court or jury to make a fair and reasonable approximation" as to damages); *Glendale Fed. Bank, FSB v. United States*, 378 F.3d 1308, 1313 (Fed. Cir. 2004) ("Proof of reliance damages are factual determinations to be made by the trial court on the basis of the evidence presented by the plaintiff.").  Thus, contrary to the EPA's framing, Plaintiffs have not "resisted submitting requests for closeout costs."  Resp. at 12.  Plaintiffs have simply exercised their lawful right to seek damages in an amount to be determined by this Court, rather than the very party that breached Plaintiffs' agreements in the first place.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' partial motion for summary judgment on liability and allow the case to proceed to the damages phase of this case.  In the alternative, if the Court believes there are genuine issues of material fact as to whether Plaintiffs have suffered any damages necessary for a liability showing, the Court should grant Plaintiffs' motion in part as to breach and allow the question of damages to be developed further.

20

Dated: July 13, 2026                    Respectfully submitted,

**ANTHONY G. BROWN**                    **KRISTIN K. MAYES**
ATTORNEY GENERAL OF MARYLAND            ATTORNEY GENERAL OF ARIZONA

By: */s/ Lauren Gorodetsky*             By  */s/ Joshua A. Katz*
Lauren Gorodetsky*                      Mary M. Curtin
Keith M. Jamieson*                        *Senior Litigation Counsel*
  *Assistant Attorneys General*         Joshua A. Katz*
Office of the Attorney General            *Assistant Attorney General*
200 Saint Paul Place                    Office of the Arizona Attorney General
Baltimore, Maryland  21202              2005 N. Central Ave.
(410) 576-7057                          Phoenix, Arizona 85004
LGorodetsky@oag.maryland.gov            (602) 542-7000
kjamieson@oag.maryland.gov              Mary.curtin@azag.gov
                                        Joshua.Katz@azag.gov

*Counsel for the Maryland Clean Energy
Center*                                 *Counsel for the State of Arizona*

**ROB BONTA**                           **PHILIP J. WEISER**
ATTORNEY GENERAL OF CALIFORNIA          ATTORNEY GENERAL OF COLORADO

By: */s/ Dylan C. Redor*                By: */s/ Carrie Noteboom*
Dylan C. Redor*                         Carrie Noteboom
Theodore A. McCombs                       *Assistant Deputy Attorney General*
Marie Logan                             David Moskowitz*
Rebecca Hunter                            *Deputy Solicitor General*
  *Deputy Attorneys General*            Cynthia Vitale
Abigail Blodgett                          *Assistant Attorney General*
Myung Park                              Colorado Office of the Attorney General
  *Supervising Deputy Attorneys General* Ralph L. Carr Judicial Center
California Department of Justice         1300 Broadway, 10th Floor
300 S. Spring St.                       Denver, CO  80203
Los Angeles, CA  90013                  (720) 508-6000
(213) 269-6706                          Carrie.Noteboom@coag.gov
dylan.redor@doj.ca.gov                  David.Moskowitz@coag.gov
marie.logan@doj.ca.gov                  Cynthia.Vitale@coag.gov

*Counsel for the California Public Utilities
Commission*                             *Counsel for the State of Colorado*

**WILLIAM TONG**                        **BRIAN L. SCHWALB**
ATTORNEY GENERAL OF CONNECTICUT         ATTORNEY GENERAL FOR THE DISTRICT OF
                                          COLUMBIA

By: */s/ Jill Lacedonia*
Jill Lacedonia*                         By: */s/ William Stephens*

21

*Assistant Attorney General*
Connecticut Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5250
jill.lacedonia@ct.gov

*Counsel for the State of Connecticut*


**ANNE E. LOPEZ**
ATTORNEY GENERAL OF HAWAIʻI

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
  *Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
  *Solicitor General*
Hawaiʻi Department of the Attorney General
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
david.d.day@hawaii.gov
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**OFFICE OF THE GOVERNOR** *ex rel.*
**ANDY BESHEAR**
IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
THE COMMONWEALTH OF KENTUCKY

By:  */s/ S. Travis Mayo*
S. Travis Mayo
  *General Counsel*
Taylor Payne
  *Chief Deputy General Counsel*
Laura C. Tipton
  *Deputy General Counsel*
Office of the Governor
700 Capitol Avenue, Suite 106

William Stephens*
  *Assistant Deputy Attorney General*
Lauren Marks
Lauren Cullum
  *Special Assistant Attorneys General*
Office of the Attorney General for the District
  of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C.  20001
William.Stephens@dc.gov
Lauren.marks@dc.gov
lauren.cullum@dc.gov

*Counsel for the District of Columbia*


**KWAME RAOUL**
ATTORNEY GENERAL OF ILLINOIS

By: */s/ Katharine Roller*
Katharine Roller*
  *Complex Litigation Counsel*
Elizabeth B. Scott*
  *Assistant Attorney General*
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
(773) 519-1842
Katharine.roller@ilag.gov

*Counsel for Illinois Finance Authority*


**AARON M. FREY**
ATTORNEY GENERAL OF MAINE

By: */s/ Caleb Elwell*
Caleb E. Elwell
  *Assistant Attorney General*
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8545
Caleb.elwell@maine.gov

*Counsel for the State of Maine*

22

Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**ANDREA JOY CAMPBELL**
ATTORNEY GENERAL OF MASSACHUSETTS

By: /s/ Amy Laura Cahn
Amy Laura Cahn*
   *Special Assistant Attorney General*
Terrence Vales
   *Assistant Attorney General*
Katherine Dirks*
   *Chief State Trial Counsel*
Vanessa Arslanian
   *State Trial Counsel*
One Ashburton Place
Boston, MA 02108
(617) 963-2277
amy.laura.cahn@mass.gov
terrence.vales@mass.gov
katherine.dirks@mass.gov
vanessa.arslanian@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**DANA NESSEL**
ATTORNEY GENERAL OF MICHIGAN

By: /s/ Neil Giovanatti
Neil Giovanatti*
Polly Synk*
   *Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov
SynkP@michigan.gov

*Counsel for the State of Michigan*

**KEITH ELLISON**
ATTORNEY GENERAL OF MINNESOTA

By: /s/ Ryan Pesch
Ryan Pesch
Cat Rios-Keating
   *Special Assistant Attorneys General*
Brian Carter
   *Special Counsel*
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-728-7116
ryan.pesch@ag.state.mn.us
catherine.rios-keating@ag.state.mn.us

**AARON D. FORD**
ATTORNEY GENERAL OF NEVADA

By: /s/ K. Brunetti Ireland
K. Brunetti Ireland*
   *Chief Deputy Attorney General*
   *Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for Nevada Clean Energy Fund*

23

brian.carter@ag.state.mn.us

*Counsel for the State of Minnesota*

**JENNIFER DAVENPORT**
ATTORNEY GENERAL OF NEW JERSEY

By: */s/ Daniel Resler*
Daniel Resler
Lauren E. Van Driesen
Jack Ventura
  *Deputy Attorneys General*
Office of the Attorney General
33 Washington Street, Ninth Floor
Newark, NJ 07101
(973) 648-4726
Daniel.Resler@law.njoag.gov

*Counsel for the State of New Jersey*

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

By: */s/ Matthew Eisenson*
Matthew Eisenson*
  *Assistant Attorney General*
Kelsea Suarez*
  *Special Assistant Attorney General*
Environmental Protection Bureau
Office of the Attorney General
28 Liberty Street, 19th Floor
(212) 416-8481
matthew.eisenson@ag.ny.gov

*Counsel for the New York State Energy
Research and Development Authority*

**DAN RAYFIELD**
ATTORNEY GENERAL OF OREGON

By: /s/ *Coby Howell*
Coby Howell
  *Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880

**RAÚL TORREZ**
ATTORNEY GENERAL OF NEW MEXICO

By: */s/ J. Spenser Lotz*
J. Spenser Lotz*
  *Assistant Attorney General*
Environmental Protection Bureau
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 616-7560
slotz@nmdoj.gov

*Counsel for the State of New Mexico*

**JEFF JACKSON**
ATTORNEY GENERAL OF NORTH CAROLINA

**LAURA HOWARD**
CHIEF DEPUTY ATTORNEY GENERAL

By /s/ Daniel T. Wilkes
Daniel T. Wilkes*
  *Assistant Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
(919) 716-6415
dwilkes@ncdoj.gov

*Counsel for the State of North Carolina*

**PENNSYLVANIA ENERGY
DEVELOPMENT AUTHORITY**

By: */s/ Michael J. Heilman*
Michael J. Heilman
  *Litigation Coordinator*
Michael A. Braymer
  *Chief Counsel*

24

Fax (971) 673-5000
coby.howell@doj.oregon.gov

*Counsel for the State of Oregon*

Pennsylvania Department of Environmental
Protection
Office of Chief Counsel
400 Waterfront Drive
Pittsburgh, PA 15222
Phone: 412-442-4241
Email: mheilman@pa.gov

*Counsel for Pennsylvania Energy
Development Authority*

**PETER F. NERONHA**
ATTORNEY GENERAL OF RHODE ISLAND

By: */s/ Nicholas M. Vaz*
Nicholas M. Vaz
   *Special Assistant Attorney General*
Office of the Attorney General
Environment and Energy Unit Chief
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 ext. 2297
nvaz@riag.ri.gov

*Counsel for the State of Rhode Island*

**CHARITY R. CLARK**
ATTORNEY GENERAL OF VERMONT

By: */s/ Jonathan T. Rose*
Jonathan T. Rose*
   *Solicitor General*
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
Jonathan.rose@vermont.gov

*Counsel for the State of Vermont*

**NICHOLAS W. BROWN**
ATTORNEY GENERAL OF WASHINGTON

By: */s/ C. L. Junine So*
C. L. Junine So*
Sarah E. Smith-Levy*

   Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
(206) 464-7744
junine.so@atg.wa.gov
sarah.e.smith-levy@atg.wa.gov
*Counsel for the State of Washington*

By: */s/Darrell W. Kuntz, III*
Darrell W. Kuntz, III (VSB: 95491)*
*Assistant Attorney General*
Katherine Kulbok (VSB: 90853)
*Assistant Attorney General*

**WISCONSIN ECONOMIC
DEVELOPMENT CORPORATION**

By: */s/ Jennifer H. Campbell*
Jennifer H. Campbell
   *Chief Legal Officer*
2352 S. Park St., Suite 303
Madison, WI 53713
(608) 210-6811
jennifer.campbell@wedc.org

*Counsel for Wisconsin Economic
Development Corporation*

25

Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-3643
dkuntz@oag.state.va.us
kkulbok@oag.state.va.us

*Counsel for the Virginia Department of Energy*


*\* Admitted to appear in this Court on behalf of Plaintiffs*